KARIN G. PAGNANELLI (SBN 174763)
 kgp@msk.com
MARC E. MAYER (SBN 190969)
 mem@msk.com
EMILY F. EVITT (SBN 261491)
 efe@msk.com
DANIEL A. KOHLER (SBN 285501)
 dxk@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1377 West Olympic Boulevard
Los Angeles, California 90064-1683
Telephone:   (310) 312-2000
Facsimile:   (310) 312-3100

Attorneys for Plaintiff
Blizzard Entertainment, Inc.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BOSSLAND GMBH, a foreign corporation, and Does 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>**(1) TRAFFICKING IN CIRCUMVENTION DEVICES**<br><br>**(2) INDUCEMENT TO INFRINGE COPYRIGHT**<br><br>**(3) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br><br>**(4) VICARIOUS COPYRIGHT INFRINGEMENT**<br><br>**(5) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br><br>**(6) UNFAIR COMPETITION**<br><br>**[DEMAND FOR JURY TRIAL]** |

Mitchell
Silberberg &
Knupp LLP

7803901.11

Blizzard Entertainment, Inc. ("Blizzard") avers as follows:

## PRELIMINARY STATEMENT

1.      Blizzard is a developer and publisher of high-quality computer games and related entertainment products, including the massively popular online computer games "World of Warcraft" ("WoW"), "Diablo 3" ("D3"), "Heroes of the Storm" ("HOTS"), and "Hearthstone." Most recently, on May 24, 2016, Blizzard released the highly anticipated multiplayer game "Overwatch." In the few weeks since its release, Overwatch has become one of the most popular games ever released, and it represents a massive investment of time, money, and creative energy. (WoW, D3, HOTS, Hearthstone, and Overwatch collectively are referred to as the "Blizzard Games.")

2.      Defendant Bossland GmbH ("Bossland") and those working in concert with it have built a profitable business by creating, distributing, maintaining, and updating malicious software products that are specifically designed to enable their users to cheat at the Blizzard Games, at the expense of Blizzard and its legitimate customers. These software products include four "bot" programs – "HonorBuddy," "DemonBuddy," "StormBuddy," and "Hearthbuddy" (the "Buddy Bots") – that enable users to automate their gameplay and manipulate the Blizzard Games to their competitive advantage. Additionally, Bossland recently developed and released to the public "Watchover Tyrant," a product that enables users to cheat in Blizzard's brand new game "Overwatch" (the "Overwatch Cheat").

3.      The Buddy Bots and the Overwatch Cheat (collectively, the "Bossland Hacks") have caused, and are continuing to cause, massive and irreparable harm to Blizzard. Blizzard's business depends upon its games being enjoyable and fair for players of all skill levels, and Blizzard expends an enormous amount of time and money to ensure that this is the case. The Bossland Hacks destroy the integrity of

the Blizzard Games, thereby alienating and frustrating legitimate players and diverting revenue from Blizzard to Defendants. Defendants' sale and distribution of the Bossland Hacks in the United States has caused Blizzard to lose millions or tens of millions of dollars in revenue, and to suffer irreparable damage to its goodwill and reputation. Moreover, by releasing "Overwatch Cheat" just days after the release of "Overwatch," Defendants are attempting to destroy or irreparably harm that game before it even has had a chance to fully flourish. Meanwhile, Defendants have been massively and unjustly enriched at Blizzard's expense, having received hundreds of thousands (if not millions) of dollars in profits from the sale of the Bossland Hacks in the United States.

4.    In creating and distributing the Bossland Hacks, Defendants have engaged in numerous unlawful acts under U.S. law. Defendants have violated Section 1201 of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(b)(1), by selling, importing, offering, providing, and otherwise trafficking in technologies that circumvent or evade Blizzard's anti-cheat technologies. Defendants have encouraged and induced individuals located in the United States to infringe copyrights. Defendants also have knowingly, intentionally, and maliciously induced thousands or tens of thousands of Blizzard customers in the United States to breach their contracts with Blizzard, including contracts that explicitly prohibit them from engaging in the precise type of cheating that Bossland enables by its hacks. Defendants not only know that their conduct is unlawful, but they engage in that conduct with the deliberate intent to harm Blizzard and its business. Blizzard is entitled to monetary damages, injunctive and other equitable relief, and punitive damages against Defendants.

//

//

//

//

## JURISDICTION AND VENUE

5.     This is a civil action seeking damages, injunctive relief, and other equitable relief, under the Copyright Act, 17 U.S.C. § 101 *et seq.*; the DMCA, 17 U.S.C. § 1201; and the laws of the State of California.

6.     This Court has subject matter jurisdiction over Blizzard's claims for copyright infringement and violation of the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Blizzard's state law claims for intentional interference with contract and unfair competition, which are so related to Blizzard's claims under the Copyright Act and DMCA as to be part of the same case or controversy. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, and the action is between a California citizen and a citizen of a foreign jurisdiction.

7.     This Court has personal jurisdiction over Defendants because they have purposefully directed their activities at the United States, and at California in particular, have purposefully availed themselves of the benefits of doing business in California, and have established a continuing presence in California.  Blizzard is informed and believes, and on that basis alleges, that, without limitation:

(a)     Defendants conduct extensive and ongoing business with users in the United States and the State of California;

(b)     Defendants distribute the Bossland Hacks in the United States and the State of California, advertise and market the Bossland Hacks in the United States and the State of California, and communicate directly with users in the State of California, including for the purposes of soliciting purchases of the Bossland Hacks by such users and providing technical support for the Bossland Hacks;

(c)     Defendants have directed their unlawful activities at Blizzard, knowing and intending that Blizzard would be harmed by their conduct in the United States and primarily in California, where Blizzard has its principal place of

Mitchell
Silberberg &
Knupp LLP

7803901.11

3

business (in fact, Defendants specifically advertise their products as being made for Blizzard's games);

(d)     Defendants have entered into, and continue to enter into, hundreds or thousands of contracts with individuals in the United States and in the State of California, including contracts pursuant to which such individuals license from Defendants the right to install and use the Bossland Hacks.  In return for such licenses, Defendants receive ongoing recurring monthly payments from individuals in the United States and the State of California;

(e)     Defendants employ or engage individuals residing within the United States to create, code, develop, test, and support the Bossland Hacks;

(f)     Defendants contract with numerous entities located in the United States and the State of California in connection with their business.  This includes, for example, domain name registries, hosting or content delivery services, and credit card processors and merchant banks; and

(g)     Defendants distribute the Bossland Hacks via content delivery networks and servers located in the United States and the State of California.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which Blizzard's injury was suffered.

## THE PARTIES

9.     Blizzard is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California. Blizzard is the publisher and owner of all rights, title, and interest in the immensely popular computer games "World of Warcraft," "Diablo 3," "Heroes of the Storm," "Hearthstone," and "Overwatch."

10.     Blizzard is informed and believes, and on that basis alleges, that Defendant Bossland GmbH is a company incorporated in Germany, with its

Mitchell
Silberberg &
Knupp LLP

7803901.11

4

1 principal place of business in Zwickau, Germany.  Blizzard is informed and

2 believes that Bossland is the developer and distributor of the Bossland Hacks and

3 is responsible for creating, producing, maintaining, marketing, advertising,

4 supporting, and monetizing the Bossland Hacks.

5       11.    The true names and capacities, whether individual, corporate,

6 associate, or otherwise, of the defendants sued herein as Does 1-10 inclusive, are

7 unknown to Blizzard, which has therefore sued said defendants by such fictitious

8 names.  These defendants may include individuals whose real identities are not yet

9 known to Blizzard, but who are acting in concert with one another, often in the

10 guise of Internet aliases, in committing the unlawful acts alleged herein.  Blizzard

11 will seek leave to amend this complaint to state their true names and capacities

12 once said defendants' identities and capacities are ascertained.  Blizzard is

13 informed and believes, and on that basis avers, that all defendants sued herein are

14 liable to Blizzard as a result of their participation in all or some of the acts set forth

15 in this complaint.  (All of the aforementioned defendants collectively are referred

16 to herein as "Defendants.")

17       12.    Blizzard is informed and believes, and on that basis alleges, that at all

18 times mentioned in this complaint, each of the Defendants was the agent of each of

19 the other Defendants and, in doing the things averred in this complaint, was acting

20 within the course and scope of such agency.

21

22 **FACTS APPLICABLE TO ALL CLAIMS**

23 **Blizzard And Its Computer Games**

24       13.    Blizzard is a computer game developer and publisher, engaged in the

25 business of developing, financing, producing, marketing, and distributing high-

26 quality software game products.  Blizzard is one of the world's most respected

27 makers of computer games, including the incredibly popular titles "World of

28 Warcraft," "Diablo 3," "Heroes of the Storm," "Hearthstone," and, most recently,

Mitchell
Silberberg &
Knupp LLP

7803901.11

5

"Overwatch" (collectively, the "Blizzard Games").  Blizzard is the owner of valid and subsisting copyrights in each of the Blizzard Games.

14.    The success of each of the Blizzard Games rests in part on Blizzard's ability to offer a consistently compelling player experience so that its customers remain invested in the Blizzard Games and play them for a sustained period of time.

15.    **World of Warcraft** ("WoW") is a Massively Multiplayer Online Roleplaying Game ("MMORPG"), a genre of computer game in which a large number of players interact with each other simultaneously in a persistent "virtual" online world.  In order to recoup its massive investment in WoW, Blizzard charges users a monthly (or yearly) subscription fee.  Payment of the subscription fee permits users to access Blizzard's WoW servers and play the WoW game.  Accordingly, Blizzard takes great pains to ensure that the WoW game world offers fair, interesting, fun, and compelling challenges, so that players remain subscribers to WoW.

16.    **Diablo 3** ("D3") is an online "action roleplaying game" in which players (either on their own or cooperatively in groups of up to four) battle monsters, demons, and other enemies, building their characters by obtaining experience and in-game items.  In addition to the substantial capital and resources expended by Blizzard in developing D3, Blizzard expends substantial resources on an ongoing basis developing and releasing content patches and maintaining the D3 game (including server maintenance, bug fixes, and balance tweaks).

17.    **Heroes of the Storm** ("HOTS") is a competitive, skill-based multiplayer game in which two teams of five players engage one another in competitive head-to-head combat.  HOTS utilizes a "free to play" business model, in which players are not charged to initially download the HOTS client software or play the game online.  Instead, Blizzard relies on in-game user purchases (sometimes referred to as "microtransactions") to recoup its massive investment in

HOTS (for example, a HOTS player might pay to unlock a new playable character, or purchase aesthetic upgrades for his or her existing characters). Only dedicated HOTS players typically make these in-game purchases, and thus it is critical to Blizzard's business that players remain invested in the game and interested in purchasing in-game items and upgrades.

18. **Hearthstone** is an online collectible card game (a "CCG"), utilizing characters and settings from World of Warcraft. Hearthstone is free-to-play with no monthly subscription. Like other CCGs, Hearthstone has a base set of cards and a series of additions and expansions. New cards are awarded by playing the game or by purchasing card packs. To keep players interested in the game, Blizzard regularly releases card updates and single-player "adventures" that reward the player with new, exclusive cards. Because the financial success of Hearthstone relies on purchases of this additional content, it is critical to Blizzard's business model that the game remains fun to play and that players are willing to invest in the game by purchasing new cards or new content.

19. **Overwatch**, released on May 24, 2016, is a team-based, online multiplayer, "first person shooter" ("FPS") game. Overwatch is a highly competitive, skill-based game with a fixed set of rules and regulations that have been carefully designed to ensure that all players stand on equal footing and have a fair chance to defeat their opponents and progress in the game. Maintaining proper game balance is absolutely critical to the game's success. Thousands of hours have been spent by Blizzard to ensure that the game is fair and fun to play. If that balance is artificially upset, or if there is a perception that some players are cheating or have an unfair advantage, then players will grow frustrated with the game and stop playing, the robust multiplayer community will wither before it takes root, and the game will not reach its full potential.

### Blizzard's Efforts To Protect Its Games

20.     The Blizzard Games are under near-constant threat from individuals and corporations who seek to exploit the Games for their own personal gain, at the expense of others.  For this reason, Blizzard seeks to protect the integrity of its products and the sanctity of its users' game play through both technical and contractual measures.

### Blizzard's Technical Security Measures

21.     In order to protect its games from cheating or unauthorized exploitation, Blizzard has developed and employs a software program called "Warden."  Warden is a technical measure that prevents unauthorized access to the Blizzard Games, restricts users from loading unauthorized copies of the Blizzard Games, and otherwise monitors the game client and environment for malicious or unauthorized software processes.

22.     One of the ways that Warden enforces Blizzard's rights is by running targeted scans for the presence and/or use of "signatures" of known unauthorized third-party programs that facilitate cheating or allow the modification of the game interface and/or experience in any way not authorized by Blizzard.  If Warden detects that a user is engaged in prohibited hacking or cheating activities, it will deny that user access to the Blizzard Game.  As a result, for any hack or cheat software, including the Bossland Hacks, to be effective, the software must be designed to prevent its detection by Warden, either by concealing itself from Warden or by disabling Warden.

23.     Blizzard also uses encryption measures to protect the Blizzard Games from being exploited and manipulated by hackers and cheaters.  For example, Blizzard encrypts the "data pointers" used by its games so that hackers cannot locate critical gameplay data such as enemy and ally positions and enemy health.

Mitchell
Silberberg &
Knupp LLP

7803901.11

8

Thus, to access and obtain information that can be used to modify and alter the Blizzard Games it is necessary to engage in decryption activities.

## Blizzard's Contractual Protection Of Its Games

24.     In order to access, download, or play any of the Blizzard Games, users must create and register an account with Blizzard's proprietary Battle.net system. To create a Battle.net account, users must expressly manifest their assent to the "Battle.net End User License Agreement" (the "EULA").  The entire text of the EULA is displayed to users at the time they are asked to assent to its terms.  The EULA also is made available on Blizzard's website at http://us.blizzard.com/en-us/company/legal/eula.html.

25.     The EULA is a conditional, limited license agreement between Blizzard and its users.  Under the EULA, Blizzard licenses the right to download, copy, install, and play the Blizzard Games, subject to certain terms, restrictions, and conditions.  Among other provisions, the EULA expressly states that, as a condition to the limited license:  "You agree that you will not, in whole or in part or under any circumstances, do the following:

> Derivative Works: Copy or reproduce (except as provided in Section 1(B)), translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on or related to the Battle.net Client or Games.

> Cheating: Create, use, offer, advertise, make available and/or distribute the following or assist therein:

> 1.     Cheats; i.e. methods, not expressly authorized by Blizzard, influencing and/or facilitating the gameplay, including exploits of any in-game bugs, and thereby granting you and/or any other user an advantage over other players not using such methods;

> 2.     Bots; i.e. any code and/or software, not expressly authorized by Blizzard, that allows the

automated control of a Game, Battle.net and/or any component or feature thereof, e.g. the automated control of a character in a Game;

3.     Hacks; i.e. accessing or modifying the software of a Game or Battle.net in a manner, not expressly authorized by Blizzard; and/or

4.     any code and/or software, not expressly authorized by Blizzard, that can be used in connection with the Battle.net client, Battle.net, a Game and/or any component or feature thereof which changes and/or facilitates the gameplay;

26.     The Blizzard Games are made available to the public exclusively through Blizzard's proprietary Battle.net system.  (This includes any physical copies of the Blizzard Games, which must be activated and played through the Battle.net system.)  Thus, it is not possible for a user to lawfully obtain access to or play any of the Blizzard Games without expressly consenting to the EULA.

## Defendants And The Bossland Hacks

27.     Defendants are engaged in the for-profit business of creating, producing, marketing, distributing, and supporting a suite of malicious software products specifically designed to harm Blizzard and the Blizzard Games.  The Bossland Hacks include the "Buddy Bots" and the "Overwatch Cheat."

28.     All of the Bossland Hacks are designed to enable players of the Blizzard Games to circumvent the rules of the Blizzard Games and gain unfair advantages over other players.

### The Buddy Bots

29.     The Buddy Bots are software programs that, when installed on a user's computer, permit the user to "automate" his or her play of the Blizzard Games.  In other words, the Buddy Bots play the game while the user is away from

Mitchell
Silberberg &
Knupp LLP

7803901.11

10

his or her computer.  Each of the Buddy Bots is designed to be used with a particular Blizzard Game, and can only be used with that game:

(a)     **Honorbuddy** is described by Defendants as the "best available [third] party Bot for the game 'World of Warcraft' from Blizzard."  Defendants claim that Honorbuddy supports every WoW expansion, and "soon" will support Blizzard's forthcoming and highly anticipated expansion "Legion."  Among other things, a WoW player using Honorbuddy is able to accumulate in-game experience and resources at a faster-than-normal rate, manipulate the in-game economy to the player's advantage, and unfairly defeat opponents.

(b)     **Demonbuddy** is described by Defendants as the "best available [third] party Bot for Blizzard's Diablo 3."  Defendants claim that Demonbuddy "picks up all gems, potions, gold, and magic items," will "sell, keep or salvage any items," "is awesome for leveling," and "farms [*i.e.* collects] gold for you."  Players using Demonbuddy are able to gather equipment, currency, and materials at a far greater rate than players who play legitimately.

(c)     **Stormbuddy** is described by Defendants as "The Bot for HOTS [Heroes of the Storm]."  Using Stormbuddy, a player may allow the computer to compete in his or her stead, easily defeating most human opponents and unfairly gaining experience and in-game currency.

(d)     **Hearthbuddy** is described by Defendants as "the Bot for Hearthstone."  Defendants claim that using this product, players may "Win GOLD, level your Heroes in Hearthstone, [and] play and win ranked games."

30.     Subscriptions for each of the Buddy Bots are sold through dedicated websites owned and operated by Defendants, at a cost of 12.95 Euros (approximately $14.50) per month or between 24.98 and 199 Euros (approximately $28 to $224) for a yearly subscription.

31.     Defendants offer users in the United States technical support, customer service, and other advice for the Buddy Bots through their online forums

or through direct email correspondence.  Among the support they offer is advice on how to avoid being caught by Blizzard for using the Buddy Bots, how to download and install the Buddy Bots, and how to most effectively use the Buddy Bots in the Blizzard Games.  Defendants also regularly solicit and receive feedback from users of the Buddy Bots, which they incorporate to prevent Blizzard from detecting and barring use of the Buddy Bots.

<u>The Overwatch Cheat</u>

32.     On or about May 25, 2016 (the day after Overwatch was released to the public), Defendants released the Overwatch Cheat.

33.     The Overwatch Cheat is advertised by Defendants as an "ESP Advantage for Overwatch."  The Overwatch Cheat purports to enable Overwatch players to cheat in the game by displaying information such as the locations and health status of hidden or obscured opponents.

34.     Defendants sell licenses to use the Overwatch Cheat via their dedicated website for a recurring subscription fee of 12.95 Euros (approximately $14.50) per month or an annual fee of 199 Euros (approximately $224).

35.     In order to use the Overwatch Cheat, users first must download the software client from Defendants' website and install that product on their personal computers.  When the Overwatch Cheat is launched, it presents an interface by which a user may select which features to activate or deactivate, such as whether to show a radar or whether to reveal the location of both hostiles and friendly players.

//
//
//
//
//
//

Mitchell
Silberberg &
Knupp LLP

7803901.11

36.     Once a user of the Overwatch Cheat selects from the presented options, the program renders a dynamic screen display that shows, in real time, positional and other information as an Overwatch match is being played by the user.  Blizzard is informed and believes, and on that basis alleges, that the Overwatch Cheat's dynamic screen display is created by reading data (including rendering data) that is created by the Overwatch software and that resides on the user's personal computer.  Thus, in its normal course of operation, the Overwatch Cheat generates a visual representation of gameplay, positional, health, map layout, and other data from Overwatch.  The visual display created by the combination of the Overwatch Cheat's overlay and the Overwatch game is illustrated below:

//

//

//

//

Mitchell
Silberberg &
Knupp LLP

7803901.11

13

**Defendants' Unlawful Conduct**

37.     By creating, producing, marketing, distributing, and supporting each of the Bossland Hacks, Defendants have engaged in a variety of unlawful activities in the United States and have caused serious and continuing harm to Blizzard and its products.

Unlawful Circumvention

38.     Defendants incorporate technology into the Bossland Hacks that is designed to avoid, bypass, or circumvent technological measures, including Warden, used by Blizzard to prevent unauthorized access to the Blizzard Games and restrict members of the public from hacking, manipulating, or improperly exploiting the Blizzard Games.

39.     One of the ways that Defendants seek to avoid, bypass, or circumvent Warden is through use of a software application known as "Tripwire."  Defendants describe Tripwire as follows:

> Tripwire is anti-spyware technology built into Bossland GmbH products to "watch the watchers."  Tripwire is always active.  It is constantly looking at [Warden]. Tripwire will automatically render all active sessions of a

Buddy bot as invalid if it detects [Warden] doing anything sneaky.  Bossland GmbH can also manually activate Tripwire upon discovery of something untoward.

40.    Blizzard is informed and believes, and on that basis alleges, that Tripwire is incorporated into each of the Bossland Hacks.  The sole purpose of Tripwire is to avoid detection of the Bossland Hacks by Warden, and Defendants advertise it as such.  As Defendants post on their forum, "the Buddy bot is responsible for *avoiding* client-side detection [*i.e.* Warden]." (emphasis added).  The Bossland Hacks would not have any commercial value or appeal without the Tripwire technology incorporated therein.

Unlawful Access, Copying And Reverse Engineering

41.    Blizzard is informed and believes, and on that basis alleges, that in order to create, improve, test, and maintain the Bossland Hacks, Defendants or freelance hackers operating in the United States, and acting at Defendants' direction, fraudulently obtained access to Blizzard's software clients for each of the Blizzard Games (or directed and caused others to do so).  They did so by purporting to assent to the EULA, without any intent to comply with its terms, in order to improperly gain access to the software clients for the express purpose of engaging in unauthorized copying, reverse engineering, disassembling, decompiling, and/or creating derivative works of the Blizzard Games.

42.    Blizzard is informed and believes, and on that basis alleges, that once in possession of Blizzard's copyrighted software code for the Blizzard Games, Defendants or freelance hackers working in concert with them operating in the United States engaged in multiple acts of unauthorized reproduction, adaptation, and/or distribution of Blizzard's copyrighted works in order to reverse engineer, disassemble, decompile, and decrypt those works.

43.     The foregoing unauthorized acts of reproduction, distribution, and adaptation were made solely for the purpose of developing or maintaining the Bossland Hacks, which have no purpose other than to allow their users to cheat in the Blizzard Games, and whose use is strictly prohibited by the EULA.  Blizzard has never authorized any of the Defendants or their contractors or employees to engage in any of the foregoing acts; to the contrary, such conduct is expressly prohibited by Blizzard in its EULA.

Defendants' Intentional Interference With The EULA

44.     Every time one of Defendants' customers uses one of the Bossland Hacks, that customer directly violates the EULA that each Blizzard customer must enter into as a precondition to installing and playing the Blizzard Games.

45.     Each of the Bossland Hacks is a single-purpose software program and works only with the specific Blizzard Game that it has been designed for. Therefore, none of the Bossland Hacks can be used without violating the EULA.

46.     Defendants know that the Bossland Hacks cannot be used without violating the EULA, but nevertheless encourage and induce their customers to use the Bossland Hacks in violation of the EULA.  Moreover, Defendants encourage their customers in the United States to secretly commit ongoing and continuing breaches of the EULA by, for example, counseling their customers about how to avoid being caught by Blizzard for using the Bossland Hacks.  Defendants even have created special message boards to discuss Blizzard's policing activities and to report account bans, so that customers can gain a better understanding of how to trick Blizzard and avoid being detected using the Bossland Hacks.

47.     Recently, after Blizzard terminated the accounts of thousands of Overwatch players as a result of their use of the Overwatch Cheat, Defendants announced to the public that "[w]e are already working on a better way to handle

detection," thus confirming their deliberate intent to cause additional and ongoing breaches of the EULA.

## The Harm To Blizzard From Defendants' Conduct

48.     By their conduct, Defendants have caused and continue to cause serious harm to the value of Blizzard's games and to Blizzard's online community. Such harm is immediate, massive and irreparable, and includes (but is not limited to) the following:

(a)     Defendants irreparably harm the ability of Blizzard's legitimate customers in the United States to enjoy and participate in the online experience carefully created by Blizzard.  That, in turn, causes users to grow dissatisfied with Blizzard's games, lose interest, and stop playing.  Blizzard is informed and believes, and on that basis alleges, that thousands of customers have cancelled World of Warcraft subscriptions, ceased playing the Blizzard Games, and/or ceased purchasing goods and services (including virtual goods) for the Blizzard Games as a result of the Bossland Hacks.

(b)     Defendants' conduct has forced Blizzard to spend enormous sums of money (and vast amounts of time) attempting to remediate the damage caused by the Bossland Hacks.  This includes creating and releasing new versions of the Blizzard Games that counteract the Bossland Hacks, responding to player complaints, employing personnel to police the games to detect the use of the Bossland Hacks, and "banning" (*i.e.*, permanently deleting the accounts of) users who are using the Bossland Hacks.

(c)     Defendants' conduct harms Blizzard's reputation and results in the loss of customer goodwill, in the United States and worldwide.

49.     Defendants' conduct has resulted in damage to Blizzard in an amount to be proven at trial.  By Blizzard's estimation, such damage is in the tens or hundreds of millions of dollars.  Unless Defendants are preliminarily or

Mitchell
Silberberg &
Knupp LLP

7803901.11

17

permanently enjoined, Blizzard will continue to suffer severe harm from the Bossland Hacks.

## COUNT I

### Trafficking In Circumvention Devices

50.     Blizzard realleges and incorporates by reference the allegations in paragraphs 1 through 49, as if set forth fully herein.

51.     The Blizzard Games, including but not limited to the source code and audiovisual game play environments, are copyrighted works.

52.     Blizzard has incorporated into the Blizzard Games technological measures, including Warden, that effectively control access to the Blizzard Games, including access to the dynamic audiovisual elements that comprise the Blizzard Games.

53.     The Bossland Hacks are comprised of or contain technologies, products, services, devices, components, or parts thereof (including Tripwire) that primarily are designed or produced for the purpose of circumventing technological measures, including Warden, that effectively control the access to copyrighted works (the Blizzard Games), and that protect the exclusive rights of the copyright owner (Blizzard).

54.     The Bossland Hacks (and the portions thereof that circumvent Warden) have no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a copyrighted work and that protects the exclusive rights of a copyright owner.

55.     Defendants market the Bossland Hacks in the United States with knowledge of their use to circumvent Blizzard's technological access controls.

56.     As a result of the foregoing, Defendants are offering to the public, providing, or otherwise trafficking in the United States in technology that violates 17 U.S.C. § 1201(a)(2).

57.     Defendants' acts constituting DMCA violations have been and continue to be performed without the permission, authorization, or consent of Blizzard.

58.     Defendants have violated Section 1201 of the DMCA willfully and for private commercial gain.

59.     Defendants' conduct has caused damage to Blizzard and has unjustly enriched Defendants, in an amount to be proven at trial.

60.     As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that, unless enjoined and restrained by this Court, Defendants will continue to violate Section 1201 of the DMCA.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

61.     As a direct and proximate result of Defendants' conduct, pursuant to 17 U.S.C. § 1203(c), Blizzard is entitled to Defendant's profits attributable to their violations of 17 U.S.C § 1201.

62.     Alternatively, Blizzard is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 1203(c), in the amount of $25,000 with respect to each violation by Defendants.

63.     Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203(b).

## COUNT II

### Inducement To Infringe Copyright

64.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 49, inclusive, and incorporates them by reference herein.

65.     Defendants have actively encouraged and induced others located in the United States to engage in acts of copyright infringement.  This includes

encouraging and inducing third-party "freelancers" or contractors to fraudulently obtain access to the Blizzard Games and then, having done so, to engage in unauthorized reproduction of the Blizzard Games.  Defendants also have encouraged users of the Bossland Hacks (particularly the Overwatch Cheat) to use those hacks to create derivative works, such as the dynamic screen overlay generated by the Overwatch Cheat.

66.    Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of Blizzard.

67.    As a direct and proximate result, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

68.    Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

69.    As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to induce infringement of Blizzard's copyrights in the United States. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

## **COUNT III**

### **Contributory Copyright Infringement**

70.    Blizzard realleges each and every allegation set forth in Paragraphs 1 through 49, inclusive, and incorporates them by reference herein.

71.     Defendants have, with knowledge, materially contributed to copyright infringement in the United States.  They have done so by enabling and encouraging third-party "freelancers" or contractors to fraudulently obtain access to the Blizzard Games and then, having done so, to engage in unauthorized reproduction of the Blizzard Games.  They also have done so by enabling users of the Bossland Hacks (particularly the Overwatch Cheat) to use the software to create derivative works, such as the dynamic screen overlay generated by the Overwatch Cheat.

72.     Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of Blizzard.

73.     As a direct and proximate result, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

74.     Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

75.     As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to contribute to infringement of Blizzard's copyrights in the United States.  Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

## **COUNT IV**

### **Vicarious Copyright Infringement**

76.     Blizzard realleges each and every allegation set forth in Paragraphs 1 through 49, inclusive, and incorporates them by reference herein.

Mitchell
Silberberg &
Knupp LLP

7803901.11

21

77.     When third-party "freelancers" or contractors in the United States engage in unauthorized reproduction of the Blizzard Games, and when users of the Bossland Hacks (particularly the Overwatch Cheat) in the United States use the software to create derivative works, such as the dynamic screen overlay generated by the Overwatch Cheat, they engage in copyright infringement.  Defendants have the right and ability to supervise and control the foregoing infringing conduct. Defendants have failed and refused to exercise such supervision and control to limit infringement to the extent required by law.  Defendants derive a direct financial benefit from this infringement.

78.     Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of Blizzard.

79.     As a direct and proximate result, Blizzard is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Blizzard is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

80.     Blizzard further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

81.     As a result of Defendants' acts and conduct, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to vicariously infringe Blizzard's copyrights in the United States. Blizzard is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

## COUNT V

### Intentional Interference With Contractual Relations

82.     Blizzard realleges and incorporates by reference the allegations in paragraphs 1 through 49, as if set forth fully herein.

83.     As described herein, before installing the client software and playing the Blizzard Games, licensed users in the United States first must assent to the EULA, thereby creating contracts between the users and Blizzard.  Among other provisions, the EULA provides that the user may not "[c]reate, use, offer, advertise, make available and/or distribute . . . Cheats [or] Bots."

84.     Blizzard's contracts with its users are valid and enforceable.

85.     Blizzard is informed and believes, and on that basis alleges, that Defendants are aware of the contracts between Blizzard and its users in the United States, and additionally are aware of the Blizzard EULA by virtue of their own Blizzard accounts.  Defendants specifically are aware that the EULA prohibits players from using cheats or bots.  Nevertheless, Defendants intentionally encourage and induce users of the Blizzard Games to purchase and use the Bossland Hacks, knowing that the use of these products by their customers is a breach of these customers' contracts with Blizzard.

86.     By inducing licensed users to breach their contracts with Blizzard, Defendants have intentionally interfered, and continue to interfere, with the contracts between Blizzard and its users.

87.     As a result of Defendants' actions, Blizzard has suffered damage in an amount to be proven at trial, including but not limited to loss of goodwill among users of the Blizzard Games, diversion of Blizzard resources to attempt to detect and prevent the use of Bossland Hacks, decreased profits, and loss of profits from users whose accounts Blizzard has terminated for violation of the EULA in the United States.

88.     As a further result of Defendants' actions, Defendants have unjustly obtained specifically identifiable property, consisting of all of the proceeds attributable to the sale of the Bossland Hacks in the United States, and any other products or services that violate any of Blizzard's rights, and any additional property traceable to those proceeds.  Those proceeds, which are directly attributable to Defendants' manipulation and misuse of the Blizzard Games and intentional interference with Blizzard's contracts, rightfully and equitably belong to Blizzard.

89.     Defendants' intentional interference with the contracts between Blizzard and its licensed users in the United States entitles Blizzard to injunctive relief and compensatory damages, the imposition of a constructive trust over Defendants' wrongfully obtained proceeds, and other available relief.

90.     Defendants are guilty of oppression, fraud, or malice, and Blizzard, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

## COUNT VI

### Unfair Competition

91.     Blizzard realleges and incorporates by reference the allegations in paragraphs 1 through 49, as if set forth fully herein.

92.     The acts and conduct of Defendants constitute unfair competition in the United States under California Business & Professions Code § 17200 *et seq*. and under California common law.

93.     As a direct and proximate result of Defendants' unfair competition in the United States, Blizzard has been damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement is appropriate.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are

Mitchell
Silberberg &
Knupp LLP

7803901.11

constructive trustees for the benefit of Blizzard, and an order that Defendants convey to Blizzard the gross receipts received or to be received that are attributable to the sale of the Bossland Hacks in the United States.

94.    Defendants are guilty of oppression, fraud or malice, and Blizzard, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

95.    As a result of Defendants' acts and conduct in the United States, Blizzard has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Blizzard is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to engage in unfair competition.  Pursuant to California Business & Professions Code § 17203, Blizzard is entitled to temporary, preliminary and permanent injunctions prohibiting further acts of unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Blizzard prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to an order:

1.    Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with Defendants from: (i) trafficking in circumvention devices in the United States; (ii) inducing, contributing to, or facilitating third-party infringements of Blizzard's copyrighted works in the United States; (iii) intentionally interfering with Blizzard's contracts with players in the United States; and (iv) engaging in unfair competition in the United States.

Mitchell
Silberberg &
Knupp LLP

7803901.11

2.      Requiring Defendants to shut down the Bossland Hacks and any colorable copies thereof, hosted at any domain, address, location, or ISP.

3.      Requiring Defendants to deliver to Blizzard all copies of materials that infringe or violate any of Blizzard's rights, as described herein.

4.      Requiring Defendants to provide Blizzard with an accounting of any and all sales of products or services in the United States that infringe or violate any of Blizzard's rights, as described herein.

5.      Awarding Blizzard actual or statutory damages for copyright infringement and willful infringement under 17 U.S.C. § 504, as appropriate.

6.      Awarding Blizzard its full costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and other applicable laws.

7.      Awarding Blizzard exemplary and punitive damages against Defendants on Blizzard's fifth cause of action for intentional interference with contractual relations.

8.      Awarding Blizzard restitution of Defendants' unlawful proceeds, including an accounting of any and all sales of the Bossland Hacks in the United States, and/or any other products or services that violate any of Blizzard's rights described herein.

9.      Imposing a constructive trust over the proceeds unjustly obtained by Defendants through the sales of the Bossland Hacks in the United States, and/or any other products or services that violate any of Blizzard's rights described herein.

//

//

//

//

//

//

1        10.    Awarding such other and further relief as this Court may deem just

2  and appropriate.

3

4  Dated: July 1, 2016                    KARIN G. PAGNANELLI

5                                      MARC E. MAYER
                                    EMILY F. EVITT

6                                      DANIEL A. KOHLER
                                    MITCHELL SILBERBERG & KNUPP LLP

7

8                              By:  /s/Marc E. Mayer
                                 Marc E. Mayer

9                                   Attorneys for Plaintiff
                               Blizzard Entertainment, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

# **JURY DEMAND**

Plaintiff Blizzard Entertainment, Inc. hereby demands a trial by jury on all matters and issues so triable.


Dated: July 1, 2016

KARIN G. PAGNANELLI
MARC E. MAYER
EMILY F. EVITT
DANIEL A. KOHLER
MITCHELL SILBERBERG & KNUPP LLP


By: /s/Marc E. Mayer
     Marc E. Mayer
     Attorneys for Plaintiff
     Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

7803901.11

28