ANTHONY G. MATRICCIANI (SBN 214730)
  *matricciani@icloud.com*
THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone:  (510) 619-6662

STEVEN D. SMELSER (SBN 180602)
  *ssmelser@yukelaw.com*
STEVEN S. VAHIDI (SBN 283951)
  *svahidi@yukelaw.com*
NICHOLAS J. HOFFMAN (SBN 284472)
  *nhoffman@yukelaw.com*
YUKEVICH | CAVANAUGH
355 S. Grand Avenue, 15th Floor
Los Angeles, California 90071-1560
Telephone:  (213) 362-7777
Facsimile:  (213) 362-7788

Attorneys for Bossland GmbH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>BOSSLAND GMBH, a foreign corporation, and Does 1 through 10, inclusive,<br><br>       Defendant. | CASE NO. 8:16-cv-01236-DOC-KES<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Declaration of Zweten Letschew and Proposed Order filed concurrently herewith]*<br><br>**Date:  January 9, 2017<br>Time:  8:30 a.m.<br>Place:  Courtroom 9C** |

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

     PLEASE TAKE NOTICE, that on Monday, January 9, 2017, at 8:30 a.m. or

as soon thereafter as the matter may be heard before the Honorable David O. Carter,

in Courtroom 9C, on the ninth floor of the above-referenced Court, located at 411

West Fourth Street, Santa Ana, CA, 92701, defendant Bossland GmbH

("Defendant") will and hereby does move this Court for an Order dismissing plaintiff Blizzard Entertainment, Inc.'s ("Plaintiff") Complaint in its entirety on the grounds that this Court lacks personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure Rule 12(b)(2).  This Motion to Dismiss is based upon the Complaint and all exhibits thereto (Dkt. No. 1), the Memorandum of Points and Authorities filed herewith, the Declaration of Zweten Letschew, and any argument presented to the Court prior to or at the hearing on this Motion.

The grounds for the Motion to Dismiss are that this Court lacks both general and specific personal jurisdiction over Defendant, and such exercise of jurisdiction would be unreasonable.  As such, the Complaint and all of its claims should be dismissed.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 11, 2016.

DATED: November 18, 2016          THE LAW OFFICE OF ANTHONY G. MATRICCIANI


By:  _____/s/ Anthony G. Matricciani_____
     Attorneys for Defendant BOSSLAND GmbH

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

    A.    Statement of Facts ................................................................................... 1

    B.    Procedural History ................................................................................... 5

III.  LEGAL STANDARD ........................................................................................ 6

    A.    General Jurisdiction Exists Only If Bossland Is "At Home" In California............. 7

    B.    Specific Jurisdiction Exists Only If Bossland's Suit-Related Conduct Creates A Substantial Connection With California. .................................... 9

IV.   ARGUMENT .................................................................................................. 11

    A.    Bossland Is Not Subject To General Personal Jurisdiction in California. ............. 11

    B.    Bossland Lacks Minimum Contacts With California, And Therefore Is Not Subject To Specific Personal Jurisdiction. .................................. 14

        1.    Bossland Has Not Purposefully Directed Its Conduct At California. ......... 14

        2.    Blizzard's Claims Cannot Arise From Conduct Bossland Never Directed At California. .................................................................. 20

        3.    Exercising Jurisdiction Over Bossland Would Be Unreasonable Due To The Burden Placed On Bossland. ......................................... 20

    C.    "Conspiracy" Jurisdiction Does Not Exist. ............................................ 24

V.    CONCLUSION ............................................................................................... 25

MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adobe Systems, Inc. v. Cardinal Camera & Video Center, Inc.,*
  No. 15-cv-02991 (JST), 2015 WL 5834135 (N.D. Cal. October 7, 2015).......................15, 18

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
  751 F.3d 796 (7th Cir. 2014) ...................................................................................19

*Amba Marketing Systems, Inc. v Jobar Intern.,*
  551 F.2d 784 (9th Cir. 1977) ......................................................................................6

*Amoco Egypt Oil Company v. Leonis Navigation Company, Inc.,*
  1 F.3d 848.........................................................................................................21, 22

*Asahi Metal Industry Co., Ltd. v. Superior Court of California,*
  480 U.S. 102 (1987).......................................................................................20, 21

*AT&T v. Compagnie Bruxelles Lambert,*
  94 F.3d 586 (9th Cir. 1996) ........................................................................................7

*Ballard v. Savage,*
  65 F.3d 1495 (9th Cir. 1995) ...................................................................................6, 19

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
  223 F.3d .......................................................................................................12, 15

*be2 LLC v. Ivanov,*
  642 F.3d 555 (7th Cir. 2011) .....................................................................................17

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008)......................................................................................6

*Bubble Genius LLC v. Smith,*
  2015 WL 4399483 (C.D. Cal. July 17, 2015) ...............................................................18

*Calder v. Jones,*
  465 U.S. 783 (1984).........................................................................................14, 24

*Chirila v. Conforte,*
  47 F.App'x 838 (9th Cir. 2002) ..................................................................................24

*Daimler AG v. Bauman,*
　　134 S. Ct. 746 (2014) ................................................................. passim

*Erickson v. Nebraska Machinery Co.,*
　　No. 15-cv-01147 (JD), 2015 WL 4089849 (N.D. Cal. July 6, 2015) ............... 15

*Fields v. Sedgwick Associated Risks, Ltd.,*
　　796 F.2d 299 (9th Cir. 1986) ........................................................ 22

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Company,*
　　284 F.3d 1114 (9th Cir. 2002) ..................................................... 9, 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
　　131 S.Ct. 2846 (2011) ............................................................... 7, 8

*GTE New Media Servs. Inc. v. BellSouth Corp.,*
　　199 F.3d 1343 (D.C. Cir. 2000) ...................................................... 19

*Gullen v. Facebook.com, Inc.,*
　　No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) .......................... 17

*Hertz Corp. v. Friend,*
　　559 U.S. 77 (2010) ................................................................... 16

*Hirsh v. Blue Cross, Blue Shield of Kansas City,*
　　800 F.2d 1474 (9th Cir. 1986) ....................................................... 11

*Imageline, Inc. v. Hendricks,*
　　2009 U.S. Dist. LEXIS 71125 ..................................................... 13, 20

*inno360, Inc. v. Zakta,*
　　50 F.Supp. 3d 587, 594 (D. Del. 2014) ............................................... 18

*Int'l Shoe Co. v. Washington,*
　　326 U.S. 310 (1945) ................................................................ 6, 11

*Keeton v. Hustler Magazine, Inc.,*
　　465 U.S. 770 (1984) .................................................................. 12

*Land v. Dollar,*
　　330 U.S. 731 (1947) ................................................................... 6

*Martinez v. Aero Caribbean,*
　　764 F.3d 1062 (9th Cir. 2014) ...................................................... 8, 13

*Microsoft Corp. v. Mountain West Computers, Inc.,*
    No. C14-1772 (RSM), 2015 WL 4479490 (W.D. Wash. July 22, 2015)........... 15

*Miller v. Gammie,*
    335 F.3d 889 (9th Cir. 2003) (en banc) ............................................................. 15

*Pacific Atlantic Trading Company v. M/V Main Express,*
    758 F.2d 1325 (9th Cir. 1985).......................................................................... 22

*Panavision Int'l, L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998)........................................................................... 23

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006) .......................................................................... 10

*Perez v. U.S.,*
    103 F.Supp. 3d 1180, 1197 (S.D. Cal. 2015)..................................................... 10

*Picot v. Weston,*
    780 F.3d........................................................................................... 9, 10, 14, 15

*Piedmont Label Company v. Sun Garden Packing Company,*
    598 F.2d 491 (9th Cir. 1979)............................................................................. 24

*Rano v. Sipa Press, Inc,*
    987 F.2d (9th Cir. 1993).................................................................................... 21

*Ranza v. Nike, Inc.,*
    793 F.3d 1059 (9th Cir. 2015)............................................................................ 7, 8

*Schwarzenegger v. Fred Martin Motor Company,*
    374 F.3d 797 (9th Cir. 2004) ...................................................................... passim

*Scott v. Breeland,*
    792 F.2d 925 (9th Cir. 1986) ............................................................................ 12

*Seedman v. Cochlear Americas,*
    No. 15-cv-00366 (JVS), 2015 WL 4768239 (C.D. Cal. Aug. 10, 2015)........... 18

*Sher v. Johnson,*
    911 F.2d 1357 (9th Cir. 1990) (holding that California's statutory
    limitation is "coextensive with the outer limits of due process under the
    state and federal constitutions, as those limits have been defined by the
    United States Supreme Court").................................................................... 6, 7

*Toys "R" Us, Inc. v. Step Two, S.A.,*
   318 F.3d 446 (3rd Cir. 2003) ............................................................. 18

*Turner Entertainment Company v. Degeto Film GmbH,*
   25 F.3d 1512 (11th Cir. 1994)....................................................... 22, 23

*Under a Foot Plant, Co. v. Exterior Design, Inc.,*
   No. 6:14-cv-01371 (AA), 2015 WL 1401697 (D. Or. March 24, 2015)........... 15

*Walden v. Fiore,*
   134 S.Ct. 1115 (2014) ........................................................... passim

*Washington Shoe Co. v. A-Z Sporting Goods Inc.,*
   704 F.3d 668 (9th Cir. 2012) .......................................................... 15

*World-Wide Volkswagen Corporation v. Woodson,*
   444 U.S. 286 (1980)....................................................................9

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
   433 F.3d 1199 (9th Cir. 2006) ......................................................... 14

**STATUTES**

Cal. Civ. Proc. Code § 410.10.................................................................6

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(2) ...................................................6

Local Rule 7-3 .............................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

In this action, Blizzard Entertainment, Inc. ("Blizzard" or "Plaintiff") asks this Court to exercise jurisdiction over Bossland, GmbH ("Bossland" or "Defendant"), a German corporation that develops and publishes software over *6,000 miles* away from this Court.  Blizzard's claim for personal jurisdiction rests entirely on *false* allegations that Bossland conducts extensive business in California (and the United States) and has expressly aimed its conduct there.  In reality, this Court lacks personal jurisdiction over Bossland and should dismiss this case because (1) this Court lacks general jurisdiction since Bossland operates exclusively out of Germany and has never engaged in substantial, continuous, or systematic activities in California (or even the United States); (2) this Court lacks specific jurisdiction since Bossland has never purposefully directed activities toward California (or the United States); and  (3) this Court's exercise of jurisdiction would be unreasonable.

### II.   FACTUAL AND PROCEDURAL BACKGROUND

#### A.   Statement of Facts

Bossland is a private German software company founded in 2009 that develops and publishes programs for the computer gaming community.  Declaration of Zwetan Letschew in Support of Motion To Dismiss Complaint ("Letschew Decl."), ¶¶ 1,3.  Bossland's programs use the information provided by certain computer games to assist the user of the gaming software. Letschew Decl., ¶ 3. Some of Bossland's programs are designed for use with Blizzard Entertainment, Inc.'s ("Blizzard") games.  Those programs are: (1) *Demonbuddy*, which is designed for use with Blizzard's *Diablo 3*; (2) *Hearthbuddy*, which is designed for use with Blizzard's *Hearthstone*; (3) *Honorbuddy*, which is designed for use with Blizzard's *World of Warcraft*; (4) *Stormbuddy*, which is designed for use with Blizzard's *Heroes of the Storm*; and (5) *Watchover Tyrant*, which is designed for use with Blizzard's *Overwatch*.  Letschew Decl., ¶ 3.  These programs are collectively

referred to as the "Bossland Programs."

Currently, due to an injunction ordered by a German court, Bossland cannot sell *Watchover Tyrant*, which is designed for use with Blizzard's *Overwatch*. Letschew Decl., ¶ 4.  However, Bossland ceased selling *Watchover Tyrant* prior to the injunction due to a technical performance issue.  Letschew Decl., ¶ 4.  In German courts, Blizzard has sought injunctions to prohibit the sale and distribution of *Demonbuddy*, *Honorbuddy*, *Stormbuddy* (the injunction has been denied), and *Watchover Tyrant*.  Letschew Decl., ¶ 4.  In United Kingdom courts, Blizzard has sought injunctions to prohibit the sale and distribution of *Demonbuddy*, *Honorbuddy*, *Stormbuddy*, and *Watchover Tyrant*.  Letschew Decl., ¶ 4.  The U.K. action is ongoing.

Bossland also develops and publishes programs for the gaming community that are not associated in any way with Blizzard's products (and are not the subject of this litigation).  These programs include:  *Adenabuddy; Archebuddy; Buddywing; Exilebuddy*; *Pokefarmer*; *Rebornbuddy*; *Tankleader*; *Wildbuddy*; and *Winterbuddy*. Letschew Decl., ¶ 5.

Bossland's principle place of business is in Zwickau, Germany, where one of its two managing directors, Zwetan Letschew, directs and manages all of the company's business.  Letschew Decl., ¶ 6.  Bossland does not have a parent company or own any subsidiary, and it does not exercise control over any business entity.  Letschew Decl., ¶ 6.  It has no place of business or employees in the United States.  Letschew Decl., ¶ 7. Bossland has never designated an agent for service of process in the United States, and it has never availed itself of state or federal jurisdiction to prosecute a lawsuit within the United States.  Letschew Decl., ¶¶ 8, 38.

Bossland does not use any of its resources or effort to make sales to California or the United States.  Letschew Decl., ¶ 32.  It does not solicit purchases of its products from anyone, regardless of their geographical location.  Letschew

1  Decl., ¶ 32.  Bossland neither conducts nor solicits business in the United States,

2  and it has neither sought to be nor been authorized, certified, or licensed to conduct

3  business in the United States.  Letschew Decl., ¶ 7.  Bossland's employees do not

4  participate in trade shows or travel to the United States on business.  Letschew

5  Decl., ¶ 13.  None of Bossland's employees have ever been physically present in

6  California or the United States for any purpose related to the allegations in this case.

7  Letschew Decl., ¶ 36.  Bossland has established independent contractor relationships

8  with persons it routinely uses for product development and customer support.

9  Letschew Decl., ¶ 33.  To Bossland's knowledge only one independent contractor

10 may reside in the United States, but not in California, and that contractor has not

11 performed work on any project related to Blizzard's products since 2015.  Letschew

12 Decl., ¶¶ 33, 34.

13         Bossland does not advertise its products other than describing its products on

14 its websites and discussing them in a newsletter.  Letschew Decl., ¶ 14.  A purchaser

15 may opt in to receive a newsletter from Bossland, which is distributed two to three

16 times a year informing the newsletter subscriber of Bossland news, including new

17 products.  Letschew Decl., ¶ 14.  The Bossland newsletter was created in July 2013

18 and has 7,467 subscribers worldwide.  Information concerning subscribers is limited

19 to an e-mail address.  Each Bossland product has its own website, and the websites

20 are typically available in seven languages:  German, French, Spanish, Portuguese,

21 Russian, Turkish, and English.  Letschew Decl., ¶ 15.  The websites are accessible

22 worldwide, and they do not target any geographical area.  Letschew Decl., ¶ 16.

23 The price for every Bossland product described on a website has always been stated

24 in Euros only.  Letschew Decl., ¶ 17.

25         Purchasing a Bossland product is subject to terms of service that include the

26 following provisions:

27         Governing Law  Any claim relating to Bossland's web site shall be governed

28         by the laws of Germany without regard to its conflict of law provisions.

<u>Privacy Law</u>  This website and it's [sic] owners take a proactive approach to user privacy and ensure the necessary steps are taken to protect the privacy of its users throughout their visiting experience. This website complys [sic] to all EU privacy laws and German national laws and requirements for user privacy. *This website does not use cookies and all the data processed on payment is stored by Gate2Shop.[1] This website only stores your email address to deliver the software to you.*  Letschew Decl., ¶ 18 (emphasis added).

Purchasers associated with at least 101 countries have purchased Bossland's products. Letschew Decl., ¶ 20.  Bossland does not use a subscription model to sell its products. Rather, it uses a licensing model. Letschew Decl., ¶ 21.  For example, a purchaser may purchase a monthly or one-year license to use a Bossland product, and the purchaser will be billed once for the monthly or one-year license.  Letschew Decl., ¶ 21.  When a customer makes a purchase from Bossland the customer provides an e-mail address. Letschew Decl., ¶ 22.  Bossland associates the e-mail address with a product key, and neither requests nor accepts physical address or billing information. Letschew Decl., ¶ 22.

Bossland does not contract with entities located in the United States for any purpose.  Letschew Decl., ¶ 37.  All of Bossland's website domain names are registered through OVH in France. Letschew Decl., ¶ 24.  All hosting is perfomed by OVH France and OVH Canada. Letschew Decl., ¶ 25.  Bossland does not keep, maintain, or store physical documents in the United States.  Letschew Decl., ¶ 10.  Bossland uses the DropBox cloud-based service to store some of its documents, excluding software and source code.  Letschew Decl., ¶ 10.  Bossland does not know the physical location of the electronic versions of these documents.  Letschew

---

[1] Gate2Shop, which is based in Israel, is the third party that processed all of Bossland's transactions relevant to Blizzard's allegations. Letschew Decl., ¶23.  On October 14, 2016, Gate2Shop terminated its relationship with Bossland at the request and demand of Blizzard. Letschew Decl., ¶ 23.

1  Decl., ¶ 10.   Beginning December 2016, Bossland will store these electronic

2  documents on German DropBox servers, which have recently become available.

3  Letschew Decl., ¶10.  Bossland does not use content delivery networks, and it does

4  not have any servers in the United States.  Letschew Decl., ¶ 26.

5      Any customer service is provided through the Internet without Bossland

6  acquiring information concerning the residence of a purchaser or having knowledge

7  of the purchaser's residential status.   Letschew Decl., ¶ 27.   Bossland has not

8  acquired any information through technical support or customer service that

9  provides whether a purchaser is a resident of California or the United States.

10  Letschew Decl., ¶ 28.  Nor does it attempt to acquire any commercially valuable

11  information that it could use, for example, to develop or target a market or specific

12  geographical area.  Letschew Decl., ¶ 28.  Bossland has always offered its products

13  indiscriminately without targeting a single customer or geographical area.  Letschew

14  Decl., ¶¶ 16, 80.

15      **B.    Procedural History**

16      Blizzard filed this lawsuit against Bossland on July 1, 2016.  The Complaint

17  (Dkt. No. 1) accuses Bossland of trafficking in circumvention devices, infringing

18  Blizzard's copyrights to the games mentioned above, intentionally interfering with

19  Blizzard's contractual relations with its customers, and competing in an unfair

20  manner.   The basis of Blizzard's jurisdictional claim is that Bossland has

21  purposefully directed its activities at California and the United States, purposefully

22  availed itself of the benefits of doing business in California, and established a

23  continuing presence in California.   Complaint, ¶ 7 (Dkt. No. 1).   However,

24  Blizzard's claim of personal jurisdiction, based wholly on information and belief, is

25  belied by the fact that Bossland lacks minimum contacts with and has never

26  expressly aimed any of its activities at California or the United States.  Undoubtedly

27  because it was aware of this jurisdictional deficiency, Blizzard for *more than five*

28  *years* has prosecuted similar claims against Bossland in Germany.  Letschew Decl.,

1    ¶ 84.  Currently, Blizzard is prosecuting nine lawsuits in Germany and two in the

2    United Kingdom against Bossland based on the Bossland Games.  Letschew Decl., ¶

3    84.

4         Finally, prior to Bossland's filing of this Motion, the parties conducted a

5    timely conference of counsel (pursuant to Local Rule 7-3), but did not reach any

6    agreement to prevent the need for filing this Motion.  Accordingly, Bossland brings

7    this Motion – which is timely pursuant to the parties' joint stipulation filed October

8    20, 2016 (Dkt. No. 14) – and moves the Court to dismiss Blizzard's Complaint for

9    lack of personal jurisdiction.

10   **III.   LEGAL STANDARD**

11        Federal Rule of Civil Procedure 12(b)(2) permits a court to dismiss a

12   proceeding for lack of personal jurisdiction.  It has long been settled that a court

13   may exercise personal jurisdiction over a nonresident defendant only if the

14   defendant has "certain minimum contacts with [the forum] such that the

15   maintenance of the suit does not offend traditional notions of fair play and

16   substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

17   (internal quotation marks omitted).

18        Although Bossland is the moving party, plaintiff Blizzard bears the heavy

19   burden of establishing that jurisdiction is proper.  *Boschetto v. Hansing*, 539 F.3d

20   1011, 1015 (9th Cir. 2008).  Blizzard must meet this burden by making a prima facie

21   showing of personal jurisdiction in its pleadings and affidavits.  *Schwarzenegger v.*

22   *Fred Martin Motor Company*, 374 F.3d 797, 800 (9th Cir. 2004).  Notwithstanding

23   the general rule that a court must accept as true all well-pleaded factual allegations

24   when considering a motion to dismiss, where jurisdictional questions are raised the

25   court need *not* assume the plaintiff's allegations are true.  *Land v. Dollar*, 330 U.S.

26   731, 735 n.4 (1947).   To the contrary, the court may inquire into the true

27   jurisdictional facts.  *Id*.  Thus, Blizzard cannot "simply rest on the bare allegations

28   of [its] complaint," but rather must "come forward with facts, by affidavit or

otherwise, supporting personal jurisdiction." *Amba Marketing Systems, Inc. v Jobar Intern.*, 551 F.2d 784, 787 (9th Cir. 1977).

Blizzard must demonstrate that personal jurisdiction is appropriate under California's long-arm statute and that the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See* Cal. Civ. Proc. Code § 410.10; *see also Ballard v. Savage*, 65 F.3d 1495, 1500 n.4 (9th Cir. 1995) ("California permits its courts to exercise personal jurisdiction to the extent permitted by the federal due process clause."); *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (holding that California's statutory limitation is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court"). Therefore, the proper inquiry is whether Bossland (i.e., a nonresident defendant) has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger, supra,* 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As explained further below, a plaintiff may establish two forms of personal jurisdiction: "general or all-purpose" and "specific or case-linked." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011). A defendant is present "generally" in the forum when its activities in the state are "substantial" or "continuous and systematic." *Sher*, 911 F.2d at 1361; *Dole Food*, 303 F.3d at 1111. "Specific jurisdiction" exists where the claim for relief arises directly from defendant's contacts with the forum state. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

### A.   General Jurisdiction Exists Only If Bossland Is "At Home" In California.

To establish general jurisdiction, a plaintiff "must meet an exacting standard." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citations omitted); *see also*

1  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 801 (general jurisdiction "is
2  an exacting standard, as it should be, because a finding of general jurisdiction
3  permits a defendant to be haled into court in the forum state to answer for any of its
4  activities anywhere in the world") (citation omitted).  In *Daimler AG v. Bauman*, the
5  Supreme Court recently clarified the scope of general jurisdiction, stating that
6  "general jurisdiction has come to occupy a less dominant place in the contemporary
7  scheme."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 757-58 (2014).  The court held
8  that only in an "exceptional case" could a "corporation's operations in a forum other
9  than its formal place of incorporation or principal place of business [] be so
10 substantial and of such a nature as to render the corporation at home in that State."
11 *Id.* at 761.

12      Indeed, the relevant inquiry "is not whether a foreign corporation's in-forum
13 contacts can be said to be in some sense continuous and systematic, it is whether
14 that corporation's affiliations with the State are so continuous and systematic as to
15 render it essentially at home in the forum State."  *Id.* at 761 (internal quotation
16 marks and alterations omitted).  Thus, a plaintiff "must meet an exacting standard"
17 and demonstrate "affiliations so continuous and systematic as to render the foreign
18 corporation essentially at home in the forum State, i.e., comparable to a domestic
19 enterprise in that State."  *Ranza v. Nike, Inc.*, 793 F.3d at 1069 (quoting *Daimler*,
20 134 S.Ct. 746, 758 at n.11).

21      General jurisdiction's domicile requirement is so stringent that "only a limited
22 set of affiliations with a forum will render a defendant amenable to all-purpose
23 jurisdiction."  *Daimler AG*, 134 S.Ct. at 760.  Engaging "in a substantial,
24 continuous, and systematic course of business," the Supreme Court has held, "is
25 unacceptably grasping."  *Id.* at 760-761.  Typically, a corporation is considered at
26 home or domiciled where it has its principal place of business or where it is
27 incorporated.  *Id.* at 760-761; *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th
28 Cir. 2014).  Courts make a crucial distinction between "doing business *with*" the

1  forum state and "doing business *in*" the forum state, because general jurisdiction can

2  only exist when the defendant conducts business *in* the forum state.

3  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 801 (emphasis in original),

4  citing, *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d at 1086.

5  **B.     Specific Jurisdiction Exists Only If Bossland's Suit-Related**

6  **Conduct Creates A Substantial Connection With California.**

7  "Specific jurisdiction, on the other hand, depends on an affiliation between

8  the forum and the underlying controversy, principally, activity or an occurrence that

9  takes place in the forum State and is therefore subject to the State's regulation."

10  *Goodyear, supra*, 131 S.Ct. at 2851 (internal quotation marks omitted).

11  Constitutional due process requires that a nonresident have such "minimum

12  contacts" with the forum state that the exercise of personal jurisdiction does not

13  "offend traditional notions of fair play and substantial justice." *Glencore Grain*

14  *Rotterdam B.V. v. Shivnath Rai Harnarain Company*, 284 F.3d 1114, 1123 (9th Cir.

15  2002) (quotations and citations omitted); *see also Picot v. Weston*, 780 F.3d at 1211.

16  The purpose of the minimum contacts requirement is to: (1) protect the nonresident

17  against the burdens of litigating in a distant or inconvenient forum; and (2) ensure

18  that states do not reach beyond the limits of their sovereignty imposed by their status

19  in a federal system. *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S.

20  286, 291 (1980).

21  Like general jurisdiction, the Supreme Court also recently clarified the scope

22  of specific jurisdiction. In *Walden v. Fiore*, the Supreme Court emphasized that

23  "the defendant's suit-related conduct must create a substantial connection with the

24  forum State," and "the relationship must arise out of contacts that the 'defendant

25  *himself*' creates with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121-1122

26  (2014) (citations and quotations omitted; emphasis in original).   "Due process

27  requires that a defendant be haled into court in a forum State based on his own

28  affiliation with the State, not based on the 'random, fortuitous, or attenuated'

contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123, *quoting Burger King,* 471 U.S., at 475 (internal quotation marks omitted).   "Thus, a 'mere injury to a forum resident is not a sufficient connection to the forum.'"   *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (*quoting Walden*, 134 S.Ct. at 1125).

The Ninth Circuit uses a three-part test to determine whether a court has specific personal jurisdiction over a defendant:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot,* 780 F.3d at 1211 (*citing Schwarzenegger*, 374 F.3d at 802).   "The plaintiff bears the burden of satisfying the first two prongs of the test." *Ibid*.   If the plaintiff satisfies his or her burden, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Ibid*. However, "[i]f any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."   *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

Of critical importance, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *Perez v. U.S.*, 103 F.Supp. 3d 1180, 1197 (S.D. Cal. 2015), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).   Rather, "[t]he question is whether a defendant has followed a course of conduct directed at the society or economy

existing within the jurisdiction of a given sovereign," and "[a]n intent to serve the entire U.S. does not necessarily show purposeful availment of the privilege of conducting business in any particular state." *Id.* (citing *J. McIntyre Mach., Ltd. V. Nicastro*, 564 U.S. 873, 886 (2011) ("an intent to serve the U.S. market" as a whole held insufficient to confer jurisdiction when no evidence exists that the distributor "purposefully availed itself of the New Jersey market") (plurality opinion).)

## IV.   ARGUMENT

### A.   Bossland Is Not Subject To General Personal Jurisdiction in California.

Blizzard's Complaint, which alleges jurisdiction using only vague, conclusory statements without any meaningful facts or explanation, fails to establish that Bossland should be subject to general jurisdiction in California.  Blizzard correctly states that Bossland is a German corporation with its principle place of business in Zwickau, Germany.   Complaint ¶ 10.   However, the remainder of Blizzard's allegations related to general jurisdiction are both conclusory and false.

Blizzard merely *concludes*, with no justification, that Bossland "[has] established a continuing presence in California" (Complaint ¶ 7) and "conduct[s] extensive and ongoing business with users in . . . the State of California" Complaint ¶ 7(a).  Such allegations fail to support a finding of general jurisdiction, especially under the "exacting standard" described by the Ninth Circuit and Supreme Court. Crucially, where a corporate defendant is neither headquartered nor incorporated in the forum state, for a district court's exercise of general personal jurisdiction over it to be proper, its general business contacts with that state must be so continuous and systematic "as to render it essentially at home" there. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014), *quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011), *citing International Shoe*, 326 U.S. at 317.  Blizzard alleges no facts whatsoever that would establish Bossland is "at home" in California.  See *Hirsh v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474,

1478 (9th Cir. 1986) (identifying relevant factors including whether the defendant is licensed to conduct business in the forum state, has registered with a regulatory agency in the forum state, pays taxes to the forum state, has an agent for the service of process, offices, employees, sales representatives, or bank accounts in the forum state, and whether the defendant targets advertising toward the forum state). Rather, Blizzard blindly claims that Bossland has a "continuing presence in California" (Complaint ¶7). However, general jurisdiction cannot be manufactured using such a conclusory statement; nor does general jurisdiction even exist absent a showing of *pervasive* contacts. *See Daimler*, 134 S.Ct. at 761.

Notwithstanding Blizzard's failure to sufficiently *allege* general jurisdiction, Bossland also provides this Court conclusive evidence that it, in fact, has *no* "substantial" or "continuous and systematic" contacts with California. For example, Bossland is organized pursuant to German law, with its principle place of business in Zwickau, Germany. Letschew Decl., ¶ 6. It conducts all of its business through its Zwickau, Germany office, and it does not have any subsidiary or exercise control over any business entity. Letschew Decl., ¶ 6. Bossland has no place of business or employees in the United States, has never been authorized, certified, or licensed to conduct business in the United States, does not own property anywhere in the United, and has never actively advertised its products or promoted its business in California (or the United States). Letschew Decl., ¶¶ 7, 14. Additionally, Bossland has never paid United States or California taxes, it does not have a bank account in in the United States, and it does not have a telephone number or mailing address in the United States. Letschew Decl., ¶ ¶ 11, 14. Bossland's employees do not participate in trade shows or travel to the United States on business. Letschew Decl., ¶ 13.

As a result of foregoing, Blizzard simply cannot establish that Bossland's contacts constitute substantial, continuous, or systematic activity sufficient to establish this Court's general jurisdiction over Bossland. *See Bancroft &Masters,*

1  *Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that a

2  defendant that is not licensed to do business in California, pays no taxes in

3  California, and does not advertise in California is not subject to general jurisdiction

4  despite its use of a California-hosted website, license agreements with several

5  California vendors, and sales of merchandise to California residents); *Daimler AG v.*

6  *Bauman*, 134 S.Ct. at 754-760 (out of state corporation had offices and facilities in

7  California, was the largest supplier of luxury vehicles to the California market, and

8  made $4.6 billion of sales in California during a relevant year, yet was not subject to

9  general jurisdiction in California because the forum was neither its place of

10 incorporation nor its principle place of business).[2]

11      Tellingly, courts in this District routinely dismiss complaints for lack of

12 personal jurisdiction where a nonresident defendant's contacts are far more

13 "substantial" and "continuous and systematic."  As just one example, in *Imageline,*

14 *Inc. v. Hendricks*, Judge Fischer denied general jurisdiction in a copyright

15 infringement action where the defendants' use of two websites hosted in California,

16 and sales to California residents through those sites, were "insufficient to constitute

17 continuous, systematic, and substantial activity in the forum."  *Imageline, Inc. v.*

18 *Hendricks*, 2009 U.S. Dist. LEXIS 71125, **10-11 (C.D. Cal. Aug. 12, 2009).

19 Here, Bossland does *not* host its website in California, or even in the United States.

20 Letschew Decl., ¶ 25.  Moreover, the defendants in *Imageline* sold 10% of their

21

---

22 [2] *See also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 779 & n. 11 (1984)

23 (no general jurisdiction despite circulation of 10,000-15,000 copies of nonresident

   defendant's magazine in forum per month); *Scott v. Breeland*, 792 F.2d 925, 928

24 (9th Cir. 1986) ("systematic" sale of records in California by popular country music

25 band from Tennessee insufficient to confer general jurisdiction); *Martinez v. Aero*

   *Caribbean*, 764 F.3d at 1070 (no general jurisdiction in California even though Aero

26 Caribbean sold between $225–$450 million in airplanes to a California company,

27 purchased parts from eleven California suppliers, sent representatives to attend

   industry conferences, promote products, and meet with suppliers in California, and

28 advertised in trade publications distributed in California).

allegedly infringing software to California residents and yet the court held that the defendants activity "[could not] rationally be classified as so continuous, systematic or substantial as to approximate physical presence in California, especially when 90% of [d]efendants' sales are elsewhere." *Id.* at *10. The same unquestionably holds true here, where Bossland's contacts with California are *de minimis* by comparison. Bossland estimates that purchasers associated with California represent *less than 3%* of its total revenue. Letschew Decl., ¶ ¶ 43-79.

In sum, Bossland lacks continuous and systematic contacts with California that would establish a presence in the forum and this Court therefore cannot exercise general personal jurisdiction over it.

**B.      Bossland Lacks Minimum Contacts With California, And Therefore Is Not Subject To Specific Personal Jurisdiction.**

Blizzard also cannot satisfy the Ninth Circuit's three-part test for specific jurisdiction.   As explained below, (1) Bossland did *not* purposefully direct its activities at California (or the United States); (2) the Complaint's claims do *not* arise out of or relate to Bossland's forum-related activities; and (3) the exercise of jurisdiction over Bossland would violate traditional notions of fair play and substantial justice. *See Picot,* 780 F.3d at 1211 (*citing Schwarzenegger*, 374 F.3d at 802). As such, this Court should refuse to exercise jurisdiction.

**1.      Bossland Has Not Purposefully Directed Its Conduct At California.**

Application of the first element of specific personal jurisdiction depends on whether the nature of the action is in contract or tort. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d at 802. In a copyright infringement case, i.e., an action sounding in tort, the court applies the "purposeful direction" analysis, pursuant to the three-part "effects" test provided by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

1   To prove purposeful direction under *Calder*, the plaintiff must prove that the
2   defendant:   "(1) committed an intentional act, (2) ***expressly aimed at the forum***
3   ***state***, (3) causing harm that the defendant knows is likely to be suffered in the forum
4   state."   *Picot v. Weston*, 780 F.3d at 1214 (citations omitted; emphasis added).
5   Although Blizzard broadly alleges intentional acts, it cannot satisfy the express
6   aiming requirement of the *Calder* test, and the Court thus lacks specific jurisdiction
7   over Bossland.

8       a.   Under *Walden*, Blizzard's Place of Business in California Does
9           Not Affect the Express Aiming Analysis.

10   The second requirement of the *Calder* effects test requires the plaintiff to
11   prove that the defendant expressly aimed its actions at the forum state.   At the very
12   outset, Defendant notes that prior Ninth Circuit authorities held that an intentional
13   act (such as willful copyright infringement) intended to harm a defendant known to
14   be in the forum is alone sufficient to show express aiming.   *See, e.g., Bancroft &*
15   *Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) and
16   *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir.
17   2012).   However, the Supreme Court *rejected* the Ninth Circuit's approach in its
18   2014 decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014).[3]

19

---

20   [3] Numerous courts in this Circuit have recognized that *Walden* clarified the scope of
21   specific personal jurisdiction and overruled earlier Ninth Circuit cases such as
22   *Washington Shoe. See, e.g., Erickson v. Nebraska Machinery Co.*, No. 15-cv-01147
     (JD), 2015 WL 4089849, at *7–11 (N.D. Cal. July 6, 2015); *Adobe Systems, Inc. v.*
23   *Cardinal Camera & Video Center, Inc.*, No. 15-cv-02991 (JST), 2015 WL 5834135,
     at * 4 (N.D. Cal. October 7, 2015); *Microsoft Corp. v. Mountain West Computers,*
24   *Inc.*, No. C14-1772 (RSM), 2015 WL 4479490, at *4-6 (W.D. Wash. July 22, 2015);
25   *Under a Foot Plant, Co. v. Exterior Design, Inc.,* No. 6:14-cv-01371 (AA), 2015
     WL 1401697, at *4 n. 1 (D. Or. March 24, 2015); *see also Miller v. Gammie*, 335
26   F.3d 889, 900 (9th Cir. 2003) (en banc) ("[W]here intervening Supreme Court
27   authority is clearly irreconcilable with our prior circuit authority . . . district courts
     should consider themselves bound by the intervening higher authority and reject the
28   prior opinion of this court as having been effectively overruled.").

MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION; MEMORANDUM OF POINTS AND
AUTHORITIES

The Supreme Court left no doubt that personal jurisdiction "must arise out of the contacts that the 'defendant *himself*' creates with the forum State." *Id.*, at 1122. In expressly extending *Walden* to the intentional tort context, the Supreme Court explained that its holding was rooted in the notion that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties." *Id.*, at 1122–23; *see also Picot, supra,* 780 F.3d at 1214-15 (Ninth Circuit, after *Walden,* rejecting an express aiming argument relying on *Washington Shoe* and holding that *Walden* "reinforced the traditional understanding that our personal jurisdiction analysis must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum").

      b.    Bossland Did Not Expressly Aim Any Alleged Intentional Acts at California.

While Blizzard alleges in conclusory fashion that Bossland has directed its activities toward California, Blizzard's blanket assertions—made exclusively on information and belief[4]—simply do not comport with fact. As explained in detail in Mr. Letschew's Declaration, Bossland has not directed *any* of these activities specifically toward California (as opposed to other jurisdictions). Blizzard tries to

---

[4] Defendant notes that Blizzard must support its allegations of jurisdictional facts with competent proof. (*Hertz Corp. v. Friend,* 559 U.S. 77, 96-97 (2010), citing *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189 ("The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty.").)

overcome this obvious gap in its jurisdictional argument by pointing to Bossland's alleged activities with respect to its users, alleging that: Bossland advertises and markets its products in California, solicits purchases from users in California, and provides technical support to California residents. *See* Complaint ¶7(b). As explained in Mr. Letschew's Declaration, however, these allegations are entirely false. Indeed, Bossland has not directed any activities at California whatsoever.

To the contrary, Bossland's website is available worldwide and persons associated with at least 101 countries purchase its products. Letschew Decl., ¶ ¶ 16, 20. The website can be viewed only by a viewer who actively seeks it. If anything, the substance of Bossland's websites is intended for a *European* audience – being available in seven languages (German, French, Spanish, Portuguese, Russian, Turkish, and English), always stating prices solely in Euros, lacking any type of forum-specific advertising, and subjecting all purchasers to German law. Letschew Decl., ¶¶ 15-18. Additionally, Bossland does not contract with entities located in the United States for Internet-based services or any other purpose. Letschew Decl., ¶ 37. Every domain name Bossland uses is registered through OVH France, a French company. Letschew Decl., ¶ 24.

The fact that Bossland's website is accessible in California and possibly used by certain California residents to purchase Bossland Programs does *not* indicate that Bossland has expressly aimed its activities toward California in particular. In *Gullen v. Facebook.com, Inc.*, for instance, the court found that use of interactive software by millions of Illinois residents was  insufficient to provide specific personal jurisdiction over Facebook. *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2-3 (N.D. Ill. Jan. 21, 2016). In that case, the plaintiff argued that Facebook was subject to specific jurisdiction in Illinois because it had supposedly "target[ed]" a certain Facebook feature at "millions of users who are residents of Illinois." Id. at *2. The court disagreed, concluding that that assertion was simply "not true" because the Facebook feature (which plaintiff claimed was

1 unlawful) was available to all Facebook users, not merely those in Illinois. *Id.*

2 Likewise, in *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011), an online dating

3 service sued a competitor for intentionally using an infringing domain address and

4 design. The court determined that, even if defendant's users lived in the forum

5 state, the constitutional requirement for minimum contacts was not satisfied simply

6 because residents had registered accounts on the website:

7 > Beyond simply operating an interactive website that is accessible from the
8 > forum state, a defendant must in some way *target* the forum state's market. If
9 > the defendant merely operates a website, even a "highly interactive' website,
10 > that is accessible from, but does not target, the forum state, then the defendant
11 > may not be haled into court in that state without offending the Constitution.

12 *be2 LLC v. Ivanov*, 642 F.3d at 558-559 (citations omitted) (emphasis in original).

13 The same analysis applies in this case—the mere fact that Bossland's website

14 is accessible in California and *possibly* used by certain California residents to

15 purchase Bossland Programs does not lead to the conclusion that Bossland

16 purposefully directed its activities toward California *in particular*. Rather, those

17 purchases by California residents, if any, result from random and fortuitious events

18 intitiated by California residents, and not from express aiming by Bossland. The

19 fact that California residents use Bossland products simply reflects that certain

20 "purchasers happen[] to live in" California; it does not indicate that Bossland aimed

21 its activities at California. *Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*,

22 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (no express aiming where

23 company alleged to have advertised and sold infringing software on its website and

24 shipped 1.2% of sales to California); *Bubble Genius LLC v. Smith*, 2015 WL

25 4399483, at *5 (C.D. Cal. July 17, 2015) (holding that website did not target

26 California even though California residents made purchases on it, because its

27 operator did not "deliberately create substantial contacts with California" or intend

28 the site to be "particularly desirable in the California market"); *Seedman v. Cochlear*

MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION; MEMORANDUM OF POINTS AND
AUTHORITIES

1  *Americas*, No. 15-cv-00366 (JVS), 2015 WL 4768239, (C.D. Cal. Aug. 10, 2015)

2  (no jurisdiction over foreign defendant because it took a "hands off approach" to

3  sales).[5]   After all, Bossland's programs are not geographically "tethered to

4  [California] in any meaningful way." *Walden*, 134 S. Ct. at 1125.

5      At bottom, Blizzard cannot establish that Bossland has expressly aimed its

6  programs at California—because it clearly has not.  Such a theory would subject

7  Bossland (and every other online service or merchant) to specific jurisdiction

8  anywhere and everywhere its service can be accessed, including all 94 federal

9  judicial districts.  As the Seventh Circuit has put it: "[I]f having an interactive

10 website were enough [to warrant specific jurisdiction], there is no limiting

11 principle—a plaintiff could sue everywhere. Such a result would violate the

12 principles on which *Walden* and *Daimler* rest." *Advanced Tactical Ordnance Sys.,*

13 *LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014); *see also, e.g.,*

14 *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir.

15 2000) (rejecting the notion that "mere accessibility" of an internet service in the

16 forum suffices for personal jurisdiction, because that "expansive theory of personal

17 jurisdiction would shred the[] constitutional assurance[] [of due process] out of

18 practical existence").

19

20

21

---

22 [5] *See also, e.g., Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451-455 (3rd Cir.

23 2003) (operation of interactive website did not appear intended to reach customers
   in forum state and thus was not sufficient to support specific personal jurisdiction in

24 trademark infringement case without showing intentional interaction with forum

25 state); *inno360, Inc. v. Zakta*, 50 F.Supp. 3d 587, 594 (D. Del. 2014) ("Defendant
   was aware that its website could be accessed in Delaware, and certainly could have

26 foreseen that Delaware residents would use its internet search services, either for

27 free or as part of a paid subscription service. This foreseeability, however, does not

28 mean that defendant purposefully directed its activities at residents of Delaware or
   "purposefully availed" itself of the privilege of doing business in Delaware.").

**2.     Blizzard's Claims Cannot Arise From Conduct Bossland Never Directed At California.**

Even if Blizzard could produce evidence demonstrating that Bossland expressly aimed its conduct at California (which it cannot), Blizzard still could not prove that its claims "arise out of" Bossland's alleged forum-related activities. *Schwarzenegger*, 374 F.3d at 802.  The Ninth Circuit "rel[ies] on a "but for" test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  As discussed above, a forum-related activity must be one that is expressly aimed at the forum.  In *Ballard*, the court determined that a foreign bank had substantial contacts with the forum and was subject to specific personal jurisdiction because it not only "depend[ed] on U.S. residents for more than half its business, it *knowingly* did so." *Ibid.* (emphasis in original).  Bossland has never directed any of its conduct at California or the United States, generates an insignificant portion of its revenue from purchases associated with the United States, and does not knowingly sell its products to purchasers associated with the United States. Letschew Decl., ¶ ¶ 30, 44-79.  There cannot be a causal link between Blizzard's claims, conduct Bossland has never directed at the United States, and third parties who took it upon themselves to seek out Bossland's products and purchase them.  Therefore, none of Blizzard's claims arise out of Bossland's activities.

**3.     Exercising Jurisdiction Over Bossland Would Be Unreasonable Due To The Burden Placed On Bossland.**

Aside from the fact that Bossland has never directed any of its conduct at California or the United States, exercising personal jurisdiction over Bossland would be unreasonable.  To determine whether the exercise of specific personal jurisdiction would be reasonable, courts consider seven non-exclusive factors: "(1) the extent of a defendant's purposeful interjection into the forum state's affairs; (2)

the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarian Company*, 284 F.3d 1114, 1125 (9th Cir. 2002). "All seven factors must be weighed. None is dispositive," *Ziegler*, 64 F.3d at 475. As explained below, in this case each factor favors a finding of unreasonableness.

**First**, Bossland did not purposefully interject itself into California's affairs. "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state. *Asahi Metal Industry Co., Ltd. v. Superior Court of California,* 480 U.S. 102, 112 (1987). In *Imageline, Inc. v. Hendricks*, the defendants entered into 1,071 transactions with California residents over an eight-year period, which accounted for ten percent of defendants' allegedly infringing sales, yet the court determined that this factor "obviously weigh[ed]" in favor of defendants since their "interjection into California's affairs would be slight." *Imageline, Inc.,* 2009 U.S. Dist. LEXIS 71125, **10-11.

If Bossland has interjected itself into California's affairs, it has been minimal. Although the Bossland Programs are available on Bossland's websites, Bossland never expressly aimed or targeted its programs at California or United States purchasers, and it never shipped any products to California or the United States. Rather, an extremely small percentage of downloads of the Bossland Programs were downloaded by purchasers who happened to be associated with the United States and California. The absence of purposeful interjection strongly favors a finding of unreasonableness and favors dismissal.

**Second**, the burden on Bossland to defend itself in California, 6,000 miles from its place of business, would be severe. Bossland is a private corporation

formed under the laws of Germany.  Letschew Decl., ¶ 83.  It does not own property or have an office in California, and it has no employees or persons authorized to act on its behalf anywhere in the United States.   Letschew Decl., ¶ ¶ 9, 83. Furthermore, none of its potential witnesses and evidence are in the United States. Letschew Decl., ¶ 83.  *See e.g., Asahi Metal Industries Company v. Superior Court*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders); *Rano v. Sipa Press, Inc*, 987 F.2d at 588 (9th Cir. 1993) ("We have held that litigation against an alien defendant requires a higher jurisdictional barrier than against a citizen from a sister state") (citations omitted); *Amoco Egypt Oil Company v. Leonis Navigation Company, Inc.*, 1 F.3d 848, 852 (the burden on defendant was considerable because "base of operations" was in Manila).

If Bossland had to defend itself in California beyond the initial stages of litigation, its Managing Director, Zwetan Letschew, who is the person most knowledgeable of Bossland's operations, would have to manage the litigation for the company and travel to California.  Letschew Decl., ¶ ¶ 2, 84.  This would impose an enormous burden on both Bossland and Mr. Letschew.   Mr. Letschew alone manages the daily operations of Bossland, and he is solely responsible for Bossland's accounting.   Letschew Decl., ¶ 84.   Were Mr. Letschew to have to appear in California to represent and assist in the defense of Bossland, he would have to stop all of Bossland's operations and it would cease to exist as a functioning company.  Letschew Decl., ¶ 84.  This factor overwhelmingly supports a finding of unreasonableness and favors dismissal.

**Third**, there is a conflict with the sovereignty of Germany because Bossland is a company incorporated pursuant to German law, has its place of business in Germany, and there is active litigation between the parties in Germany.  *See, e.g., Turner Entertainment Company v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th

1   Cir. 1994) ("Germany's legal system clearly follows procedures that ensure that
2   litigants will receive treatment that satisfies American notions of due process.";
3   *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 303 (9th Cir. 1986)
4   ("Adjudication of the dispute in a California court would interfere with the capacity
5   of English courts to resolve disputes involving English parties, and thus interfere
6   with British sovereignty) (citation omitted).  "Where, as here, the defendant is from
7   a foreign nation rather than another state, the sovereignty barrier is high and
8   undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v.*
9   *Leonis Navigation Co.,* 1 F.3d 848, 850-51 (9th Cir. 1993).  In German and United
10  Kingdom courts, Blizzard has sought injunctions to prohibit the sale and distribution
11  of the Bossland Programs.  A German court has granted an injunction prohibiting
12  Bossland from selling or distributing *Watchover Tyrant*.  Similar injunctions could
13  effectively nullify this litigation.  This factor supports a finding of unreasonableness
14  and favors dismissal.

15      **Fourth**, even though California has an interest in protecting its residents from
16  injury, that interest does not confer minimum contacts or create purposefully
17  directed conduct where none exists.  Bossland, a German company, has not directed
18  any conduct at California or the United States, and California courts "have
19  expressed concern about the adverse effect the assumption of jurisdiction might
20  have on commerce where the forum activities of the nonresident are not
21  substantial." (*Pacific Atlantic Trading Company v. M/V Main Express*, 758 F.2d
22  1325, 1330 (9th Cir. 1985) (citations omitted).)  This factor supports a finding of
23  unreasonableness and favors dismissal.

24      **Fifth**, Blizzard is prosecuting nine lawsuits concerning the Bossland
25  Programs against Bossland in Germany, one of which is before Germany's highest
26  court.  Letschew Decl., ¶ __.  The most efficient judicial resolution of the
27  controversy between Blizzard and Bossland would be to let the courts in Germany
28  resolve the claims before them, which are similar to the claims in the litigation

before this Court.  Letschew Decl., ¶ 84.  Clearly, adequate alternative forums exist in Germany.  *Turner Entertainment Company v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994) ("Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process").  This factor supports a finding of unreasonableness and favors dismissal.

**Sixth**, the importance of the forum to Blizzard's interest in convenience and effective relief is minimal.  "In evaluating the convenience and effectiveness of an alternative forum, [the Ninth Circuit has] given little weight to the plaintiff's inconvenience."  *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998).  That Blizzard has chosen to prosecute eleven lawsuits in foreign forums demonstrates that Blizzard has little interest in California or the United States as a forum for convenient and effective relief.  This factor supports a finding of unreasonableness and favors dismissal.

**Seventh**, "[t]he plaintiff bears the burden of proving unavailability of an alternative forum."  *Ziegler,* 64 F.3d. at 476.

In their totality, the seven factors heavily weigh in favor of a finding that exercising specific personal jurisdiction over Bossland in California would be unreasonable.  Therefore, the Court should dismiss Blizzard's Complaint.

## C.    "Conspiracy" Jurisdiction Does Not Exist.

In its Complaint, Blizzard seems to imply that Bossland has been conspiring with others to infringe certain copyrights:  "Blizzard is informed and believes . . . Defendants or freelance hackers working in concert with them operating in the United States engaged in multiple acts of unauthorized reproduction, adaptation, and/or distribution of Blizzard's copyrighted works in order to reverse engineer, disassemble, decompile, and decrypt those works."  (Complaint, 15:22-27.)  The Supreme Court has made clear that conclusory claims of conspiracy are insufficient to override the due process limitations it has imposed on haling foreign defendants into U.S. courts.  *See, e.g., Calder v. Jones*, 465 U.S. at 790 ("[Employees] contacts

with California are not to be judged according to their employer's activities there. . . . Each defendant's contacts with the forum State must be assessed individually.") (citation omitted).

Consistent with Supreme Court precedent, the Ninth Circuit does not recognize a conspiracy theory of personal jurisdiction. *See Chirila v. Conforte*, 47 F.App'x 838, 843 (9th Cir. 2002), citing *Underwager v. Channel 9 Australia*, 69 F.3d 361, 364 (9th Cir. 1995); *see also Piedmont Label Company v. Sun Garden Packing Company*, 598 F.2d 491, 492 (9th Cir. 1979) (within the analogous context of venue analysis, the Ninth Circuit "expressly reject[ed] any implication . . . that members of a conspiracy, as agents of one another, 'transact business' for venue purposes in any district where one of them transacts business"). In *Chirila v. Conforte*, 47 F.App'x 838 at 843, the court stated: "The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough" to confer jurisdiction over the alleged co-conspirators. Thus, even if a conspiracy theory of personal jurisdiction existed in the Ninth Circuit, Blizzard's bare allegations of "working in concert" cannot support the Court exercising jurisdiction over Bossland.

## V.  CONCLUSION

For all the foregoing reasons, this Court lacks personal jurisdiction over Bossland and the Complaint should be dismissed.


DATED: November 18, 2016        THE LAW OFFICE OF ANTHONY G. MATRICCIANI



                                By:  ___/s/ Anthony G. Matricciani___
                                     Attorneys for Defendant BOSSLAND GmbH

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 355 South Grand Avenue, Fifteenth Floor, Los Angeles, CA 90071-1560.

On November 18, 2016, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Karin G. Pagnanelli, Esq. | Attorneys for Plaintiff |
| Marc E. Mayer, Esq. | |
| Emily F. Evitt, Esq. | T:    (310) 312-2000 |
| Daniel A. Kohler, Esq. | F:    (310) 312-3100 |
| MITCHELL SILBERBERG & KNUPP LLP | kgp@msk.com |
| 1377 West Olympic Boulevard | mem@msk.com |
| Los Angeles, California 90064-1683 | efe@msk.com |
| | dxk@msk.com |

**BY CM/ECF** for parties that are CM/ECF participants.  Service is being made electronically on those parties on the attached list that are registered users of the Court's Electronic Case Filing System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on November 18, 2016, at Los Angeles, California.

Denise M. LaCroix