# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SA CV 16-1236-DOC (KESx)　　　　　　　　　　Date: January 25, 2017

Title: BLIZZARD ENTERTAINMENT, INC. V. BOSSLAND GMBH

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Goltz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):　　ORDER DENYING DEFENDANT'S MOTION TO DISMISS [16]**

Before the Court is Defendant Bossland GmbH's ("Bossland" or "Defendant") Motion to Dismiss Complaint ("Motion") (Dkt. 16). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. Having considered the parties' arguments, the Court DENIES the Motion.

### I.　Background

The following facts are drawn from the Plaintiff Blizzard Entertainment Inc.'s ("Blizzard" or "Plaintiff") Complaint ("Compl.") (Dkt. 1) and the supporting documents submitted by the parties.

Blizzard is a Delaware corporation with its principal place of business in Irvine, California and is the developer of numerous popular multiplayer online computer games, including World of Warcraft, Diablo 3, Heroes of the Storm, Hearthstone, and, most recently, Overwatch. *See id.* ¶ 1; Declaration of Clint Rice ("Rice Decl.") (Dkt. 20-9) ¶¶ 3–4.

CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-1236-DOC (KESx)                                              Date: January 25, 2017
                                                                                                    Page 2

Bossland is a German company that sells "Bots," also known as "Buddies," for each of the Blizzard games listed above. FAC ¶¶ 2, 10. While "Buddies" may sound benign, they are actually malicious software programs designed to allow their purchasers to cheat at Blizzard's games. *Id.* ¶ 2. These Buddies include "StormBuddy," "Heathbuddy," "DemonBuddy," and the ironically named "HonorBuddy." *Id.* The latest Bot that Bossland has released is known as "Watchover Tyrant" and allows its purchaser to cheat at Overwatch. *Id.*

Bossland's software is available for purchase and download on Bossland's website. However, a player can only use Bossland software if they have an up-to-date license from Bossland. Declaration of Zweten Letschew ("Letschew Decl.") (Dkt. 16-1) ¶ 21. Bossland sells monthly and yearly licenses on its website. *Id.* Bossland's website is available in multiple languages. The English portion of its website is denoted by the United States flag. Declaration of James Berkley ("Berkley Decl.") (Dkt. 20-1) ¶ 37, Ex. 37.

Bossland claims to have over 260,000 registered users. *Id.* Ex. 1. Over the past three years, sales in the United States have accounted for between ten and thirty-percent of Bossland's monthly revenue. *See* Letschew Decl. ¶¶ 44–79. Between 2015 and 2016, sales of the Bots in the United States typically accounted for ten to fifteen percent of Bossland's revenue. *See id.* ¶¶ 67–79. Blizzard's own records reflect that nearly 100,000 United States-based accounts or game licenses have been suspended or banned because their owners employed Bossland's software. Rice Dec. ¶ 19.

Bossland has registered United States trademarks for "Honorbuddy" and "Demonbuddy" and has applied for United States trademark registration for "Hearthbuddy." Berkley Decl. ¶¶ 33–36, Exs. 34–36.

Blizzard has sued Bossland in Germany, and German courts have entered injunctions barring Bossland from selling some of its Bots in Germany. Declaration of Matthias Werner (Dkt. 20-10) ¶¶ 5–8, 9–10. Bossland has taken the position in its pleadings that German courts are entitled to enjoin the sale of Bossland's Bots in Germany and not in any other country. *Id.* ¶¶ 4, 9, Exs. 1–4.

Bossland and its Bots undermine Blizzard's efforts to create games that are enjoyable and fair to players of all skill levels. FAC ¶ 3. Bossland's sale of its Bots in the United States undermines Blizzard's good will and reputation and has cost Blizzard millions, if not tens of millions of dollars in revenue. *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                              Date: January 25, 2017
                                                                                                                                      Page 3

       In its Complaint, Blizzard brings claims against Bossland for: (1) trafficking in circumvention devices in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; (2) inducement to infringe copyright; (3) contributory copyrights infringement; (4) vicarious copyright infringement; (5) intentional interference with contractual relations; and (6) unfair competition under California Business and Professions Code §§ 17200 *et seq. See generally id.*

       Bossland filed the instant motion on November 18, 2016. Blizzard opposed on December 12, 2016 (Dkt. 20), and Bossland replied on December 23, 2016 (Dkt. 21).

**II.**      **12(b)(2) Legal Standard**

       Under Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)). Because California's long-arm statute is coextensive with federal due process requirements, the personal jurisdiction analysis under state and federal law are the same. *See* Cal. Civ. Proc. Code § 410.10; *see also Roth v. Garvia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). For a court to exercise personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

       In deciding personal jurisdiction, courts may consider evidence presented in affidavits and declarations. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Plaintiffs bear the burden of showing that courts have personal jurisdiction over defendants. *See Pebble Beach*, 453 F.3d at 1154. Absent formal discovery or an evidentiary hearing, "this demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quotations omitted). To make this prima facie showing, a plaintiff can rely on the allegations in its complaint to the extent that the moving party does not controvert those allegations. *See Doe*, 248 F.3d at 922.

       If the defendant adduces evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "Conflicts between

Case 8:16-cv-01236-DOC-KES   Document 23   Filed 01/25/17   Page 4 of 11   Page ID #:1035

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-1236-DOC (KESx)                              Date: January 25, 2017
                                                               Page 4

[the] parties over statements contained in the affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."). *Schwarzenegger*, 374 F.3d at 800.

### III.   Discussion

Bossland argues that the Court lacks personal jurisdiction over it. *See generally* Mot.

Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. There are two recognized bases for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050–51 (9th Cir. 1997). Blizzard does not argue the Court has general personal jurisdiction over Bossland, but instead contends that the Court is entitled to exercise specific jurisdiction over Bossland. Opp'n at 10. Thus, the Court need consider only whether there has been a showing of specific jurisdiction.

A court has specific jurisdiction when three requirements are met. First, the defendant must have "purposefully direct[ed] his activities or consummate some transaction with the forum or resident thereof; or perform[ed] some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger*, 374 F.3d at 802). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third and finally, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* It falls to a plaintiff to demonstrate the first two prongs of the test have been met. *Id.* If a plaintiff makes that showing, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                  Date: January 25, 2017
                                                                                                                                Page 5

not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985). To apply this test, the Court must determine what the relevant forum is.

### A. Relevant Forum

Blizzard argues that the relevant forum is the entire United States under Federal Rule of Civil Procedure 4(k)(2). Opp'n at 12.

Rule 4(k)(2), known as the federal long-arm statute, allows a federal court to assert personal jurisdiction over a defendant when a defendant is not subject to jurisdiction in any state court and the exercise of jurisdiction is consistent with the United States Constitution and laws. It provides that

> For a claim that arises under federal law, serving a summons . . . establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Courts in the Ninth Circuit use a three-part analysis to assess whether jurisdiction is proper under Rule 4(k)(2). "First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach*, 453 F.3d at 1159 (internal citations omitted).

Here, Blizzard has alleged several claims under federal copyright law. *See generally* Compl. The Court may also exercise supplemental jurisdiction over the California claims because they arise out of the same "common nucleus of operative facts" as the DMCA claims. *See Apollo Educ. Grp., Inc. v. Somani*, No. C-15-1056 EMC, 2015 WL 4880646, at *2 (N.D. Cal. Aug. 13, 2015). Accordingly, the first requirement to exercise jurisdiction under Rule 4(k)(2) is met.

As to the second requirement of Rule 4(k)(2), a plaintiff is not required to establish a lack of jurisdiction in every other state. Instead, it falls to the defendant to point out another state where there would be jurisdiction. *See Apollo*, 2015 WL 4880646, at *2. Bossland has not argued that there is another state where jurisdiction would be proper. *See* Reply at 2–5. Therefore, the second requirement of Rule 4(k)(2) is also met.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                      Date: January 25, 2017
                                                                                                                                Page 6

The final component of the Rule 4(k)(2) analysis is the same as the Ninth Circuit's test for specific jurisdiction, except that instead of looking at the defendant's contact with the forum state, the Ninth Circuit considers contacts with the nation as a whole. *Pebble Beach Co.*, 453 F.3d at 1159. Accordingly, the Court will proceed to determine if specific jurisdiction is proper, considering the United States as the relevant forum.

### B. Purposeful Direction

A court's jurisdictional inquiry varies somewhat depending on the nature of the claim at issue. *Picot*, 780 F.3d at 1212. For claims sounding in contract, courts typically apply the "purposeful availment" test and ask whether a defendant has "purposefully availed himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (internal citations omitted). By contrast, when a claim sounds in tort a court applies the "purposeful direction" test. *Id.* Under that test, courts assess whether the defendant directed her actions at the forum state, regardless of where her actions took place. *Id.* In tort and intellectual property cases, like the case before this Court, a "purposeful direction" test is typically applied. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011).

The "purposeful direction" test is an "effects" test that "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803). Under the effects tests, a defendant must allegedly have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo!*, 433 F.3d at 1206).

Bossland does not dispute that the first and third elements of this test are met. *See generally* Mot.; Reply. Nor could it reasonably do so: Bossland has created a website through which one can license software. The offering of software for sale on the website is an intentional act.

Further, it is foreseeable that the harm inflicted by a violation of copyright law "will be inflicted . . . where the copyright holder has its principal place of business." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 679 (9th Cir. 2012). Therefore, Bossland had to anticipate that Blizzard, a company well known to be based in the United States, would suffer loss in the United States as a result of Bossland's software. *See id.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                                      Date: January 25, 2017
                                                                                                                Page 7

       Defendant, however, argues that its conduct was not aimed at the forum, regardless of whether the forum is California or the United States. Defendant concedes that under prior Ninth Circuit precedent, willful copyright infringement intended to harm a party known to be in the forum "is alone sufficient to show express aiming." Mot. at 15; *see also Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087–88 (9th Cir. 2000) (finding personal jurisdiction was proper in California where a Georgia based defendant attempted to interfere with a California company's use of the California company's domain name); *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d at 674 ("Because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a willful infringement is necessarily directed there as well."). However, Bossland argues that these cases have been overruled by the Supreme Court's holding in *Walden v. Fiore*, 134 S. Ct. 1115 (2014).

       In *Walden*, a Georgia police officer seized money belonging to two professional gamblers who were passing through Atlanta on a flight layover. *Id.* at 1119. The gamblers were residents of Nevada and California and sued the police officer in Nevada, alleging violations of their Fourth Amendment rights. *Id.* at 1120. The plaintiffs argued jurisdiction was proper in Nevada because the officer had committed an intentional tort against a citizen of Nevada. *Id*. The Supreme Court found that the police officer had insufficient contacts with Nevada to subject him to jurisdiction there. *Id.* at 1126. The Supreme Court explained that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 1122. Instead, it is "the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

       Defendants argue that *Walden* upended prior Ninth Circuit precedent, and willful acts directed a resident of a specific states are never alone sufficient to establish personal jurisdiction. Mot. at 16. The Court agrees with Defendants that *Walden* limited the scope of prior Ninth Circuit cases that suggested that intentionally harming a resident of a forum was sufficient to create jurisdiction over the defendant in that forum. *See also Erickson v. Nebraska Mach. Co.*, No. 15-CV-01147-JD, 2015 WL 4089849, at *4 (N.D. Cal. July 6, 2015).

       However, the Supreme Court in *Walden* explicitly noted they were not resolving the question of how "virtual contacts" interacted with the rule articulated in *Walden*. *See Walden*, 134 S. Ct. at 1125 n.9. Further, in *Walden* the Supreme Court explicitly cited with approval its previous decision in *Calder v. Jones,* 465 U.S. 783 (1984). *Id.* at 1123. In *Calder*, the Court found that where a Florida based tabloid published a libelous article about a California actress there were sufficient contacts to establish specific jurisdiction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 16-1236-DOC (KESx)                                      Date: January 25, 2017
                                                                                                                               Page 8

in California over the tabloid. In *Walden* the Supreme Court summarized the factors that led to its decision in *Calder*:

> The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State. "In sum, California [wa]s the focal point both of the story and of the harm suffered." Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California."

*Walden*, 134 S. Ct. at 1123 (quoting *Calder*, 465 U.S. at 788–789).

       This case is analogous to *Calder*. Bossland's software works exclusively in conjunction with Blizzard's American-designed and American-based game. Bossland's Bots have been widely circulated in the United States, as Bossland has sold almost 100,000 licenses to persons in the United States to use its Bots in the United States. Rice Dec. ¶ 19. Bossland caused copyright injury in the United States, and the "brunt" of the harm felt by Blizzard was suffered in the United States. Further, Bossland generates between ten and fifteen percent of its companywide revenue from the sale of the Bots in the United States. *See* Letschew Decl. ¶¶ 44–79.

       Additionally, other courts in the Ninth Circuit have found sufficient contacts where the defendant is infringing a plaintiff's intellectual property in order to directly compete with the plaintiff. *California Brewing Co. v. 3 Daughters Brewing LLC*, No. 215CV02278KJMCMK, 2016 WL 1573399, at *5 (E.D. Cal. Apr. 19, 2016) (citing *Tresona Multimedia LLC v. Legg*, No. 14-02141, 2015 WL 470228, at *4 (D. Ariz. Feb. 4, 2015)). Bossland is not precisely competing with Blizzard here. Instead, Bossland's business is parasitic in nature—it functions by piggybacking on Blizzard's sale of its games and undermining the gaming environment Blizzard is seeking to create. But like a direct competitor, Bossland's actions are pointedly undermining Blizzard's brand and profitability. Indeed, Bossland's activity is even more intermeshed with Blizzard's business than a direct competitor's would be, as Bossland's products can be used only after a person has already purchased a Blizzard game.

       Accordingly, the Court finds that Bossland has expressly aimed its conduct at the forum and that under the effects test Bossland has purposefully directed its conduct at the United States.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                                    Date: January 25, 2017
                                                                                                                                         Page 9

### C. Arising Out Of

Blizzard must next show that claims it asserts arise out of Bossland's forum-related activities. The Ninth Circuit employs a "but for" test to determine whether claims arise out of the defendant's contacts in the forum. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). This prong is satisfied if the plaintiff would not have been injured "but for" the defendant's conduct directed toward the forum state. *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 749 (N.D. Cal. 2015); *see also Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003) ("The question can be formulated as this: but for G&H's contacts with California, would Mattel's claims against G&H have arisen?"). Had Bossland not violated Blizzard's copyright and subsequently distributed its Bots for sale in the United States, Blizzard would have no claims against Bossland for a violation of Blizzard's copyright based on sales of Bots in the United States. *See AMA Multimedia LLC v. Sagan Ltd.*, No. CV-16-01269-PHX-DGC, 2016 WL 5946051, at *6 (D. Ariz. Oct. 13, 2016).

### D. Fair Play and Substantial Justice

Because Plaintiff satisfies the first two parts of the test, the burden shifts to Bossland. The Court finds Bossland has not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dole Food*, 303 F.3d at 1114 (quoting *Burger King*, 471 U.S. at 477). In making this determination, the Court considers the following factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict within the sovereignty of the defendant's state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                      Date: January 25, 2017
                                                                                                                         Page 10

*Id.* at 1114.

       With respect to the first factor, the Court concludes Plaintiff has shown Bossland purposefully interjected itself into the United States by subverting the Plaintiff's copyright and selling tens of thousands of licenses to use the Bots in the United States. While "[t]here may be circumstances under which the level of purposeful interjection into the forum supports a finding of purposeful availment yet still weighs against the reasonableness of jurisdiction, . . . this is not such a case." *Dole Food*, 303 F.3d at 1114–15.

       Turning to the second factor, the Court concludes the fact that Bossland is a German company weighs against jurisdiction. *See Dole Food*, 303 F.3d at 1115 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)). However, "this factor is not dispositive." *Id.* The Court is unconvinced by Bossland's protestations that Bossland's Managing Director, Zwetan Letschew, will be forced to travel to California and abandon his business in Germany in order to oversee this litigation if the Court exercises jurisdiction. Mot. at 21–22. As the *Dole Food* court emphasized, "[m]odern advances in communications and transportation have significantly reduced the burden of litigating in another country." *Id.* (citation and internal quotation marks omitted).

       As to the third and fifth factors, Bossland argues that the Court should allow the litigation in Germany to run its course rather than allowing Blizzard to initiate yet another lawsuit in a new forum. Mot. at 22–24. However, this lawsuit targets only Bossland's United States sales, which appear generally to be beyond the scope of what has been, will be, or can be addressed in the German litigation.

       With respect to the fourth factor, Bossland argues that courts "have expressed concern about the adverse effect the assumption of jurisdiction might have on commerce where the forum activities of the nonresident are not substantial." Mot. at 23 (quoting *Pacific Atlantic Trading Company v. M/V Main Express*, 758 F.2d 1325, 1330 (9th Cir. 1985) (citations omitted)). However, Bossland's contacts are not insubstantial, and thus this concern does not come into play. The Court instead finds that the United States has a strong interest in protecting the copyright of American corporations from being maliciously undermined.

       With respect to the sixth and seventh factors, Blizzard and Bossland have argued Blizzard can only get an injunction against the United States sale of Bossland's Bots from a United States court. Accordingly, this factor weighs in favor of exercising jurisdiction.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 16-1236-DOC (KESx)                                             Date: January 25, 2017

                                                                                                                                 Page 11

Upon consideration of the *Dole Foods* factors, the Court finds that Bossland has "failed to overcome the strong presumption of reasonableness of the assertion of personal jurisdiction." *Dole Foods*, 303 F.3d at 1117. Accordingly, the Court DENIES Bossland's Motion to Dismiss for Lack of Personal Jurisdiction.

### IV.    Disposition

Based on the foregoing, the Court hereby DENIES Bossland's Motion.

The Clerk shall serve this order on the parties.

MINUTES FORM 11                                                                                    Initials of Deputy Clerk: djg
CIVIL-GEN