# EXHIBIT 1

1   KARIN G. PAGNANELLI (SBN 174763)
       kgp@msk.com
2   MARC E. MAYER (SBN 190969)
       mem@msk.com
3   EMILY F. EVITT (SBN 261491)
       efe@msk.com
4   DANIEL A. KOHLER (SBN 285501)
       dxk@msk.com
5   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
6   Los Angeles, CA 90064-1683
    Telephone: (310)-312-2000
7   Facsimile: (310)-312-3100

8   Attorneys for Plaintiff
    Blizzard Entertainment, Inc.
9

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12

13  BLIZZARD ENTERTAINMENT,         CASE NO. 8:16-cv-01236 DOC (KESx)
    INC.,
14                                  Honorable David O. Carter
              Plaintiff,
15                                  **PROOF OF SERVICE OF**
         v.                         **SUMMONS AND COMPLAINT ON**
16                                  **DEFENDANT BOSSLAND GMBH**
    BOSSLAND GMBH, a corporation;
17  and Does 1 through 10, inclusive,

18            Defendants.

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

8361663.1

EX 1  PG 5

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| BLIZZARD ENTERTAINMENT, INC., A DELAWARE CORPORATION | Cause #: | 8:16-CV-01236-DOC (KESX) |
|---|---|---|

**BLIZZARD ENTERTAINMENT, INC., A DELAWARE CORPORATION**

Plaintiff/Petitioner

vs.

**BOSSLAND GMBH, A FOREIGN CORPORATION, AND DOES 1 THROUGH 10, INCLUSIVE**

Defendant/Respondent

Cause #:　　**8:16-CV-01236-DOC (KESX)**

CERTIFICATE OF SERVICE

This service has been completed in compliance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (Done at The Hague November 15, 1965) (Entered Into Force for the U.S. on February 10, 1969). The Certificate of Service attached is also in compliance.



**ABC Legal Services, Inc.**
633 Yesler Way, Seattle WA 98104
206-521-9000
Tracking #: **0012548202**

**ORIGINAL
PROOF OF SERVICE**

**Mitchell Silberberg & Knupp LLP**
11377 West Olympic Blvd.
Los Angeles, CA 90064
310-312-2000

Page 1 of 1

ZUSTELLUNGSZEUGNIS

**CERTIFICATE**

**ATTESTATION**

**Die unterzeichnete Behörde beehrt sich, nach Artikel 6 des Übereinkommens zu bescheinigen,**
The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

1.  **dass der Antrag erledigt worden ist \*)**
    that the document has been served \*)
    que la demande a été exécutée \*)

    - am (Datum)       6. Oktober 2016
    the (Date)
    le (date)

    - in (Ort, Straße, Nummer)   08056 Zwickau, Leipziger Str. 72
    at (place, street, number)
    à (localité, rue, numéro)

    - in einer der folgenden Formen nach Artikel 5 :
    in one of the following methods authorised by article 5:
    dans une des formes suivantes prévues à l'article 5 :

    ☒ a) in einer der gesetzlichen Formen  (Artikel 5 Absatz 1 Buchstabe a) \*).
        in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention \*).
        selon les formes légales (article 5, alinéa premier, lettre a)\*).

    ☐ b) in der folgenden besonderen Form \*):
        in accordance with the following particular method \*):
        selon la forme particulière suivante \*) :

    ☐ c) durch einfache Übergabe \*).
        by delivery to the addressee, who accepted it voluntarily \*).
        par remise simple \*).

    Die in dem Antrag erwähnten Schriftstücke sind übergeben worden an:
    The documents referred to in the request have been delivered to:
    Les documents mentionnés dans la demande ont été remis à:

    - (Name und Stellung der Person)
    (identity and description of person)
    (identité et qualité de la personne)

    - Verwandtschafts-, Arbeits- oder sonstiges Verhältnis zum Zustellungsempfänger:
    relationship to the addressee (family, business or other)
    liens de parenté, de subordination ou autres, avec le destinataire de l'acte:

2.  **dass der Antrag aus folgenden Gründen nicht erledigt werden konnte \*):**
    that the document has not been served, by reason of the following facts \*):
    que la demande n'a pas été exécutée, en raison des faits suivants \*):

Nach Artikel 12 Absatz 2 des Übereinkommens wird die ersuchende Stelle gebeten, die Auslagen, die in der beiliegenden Aufstellung im Einzelnen angegeben sind, zu zahlen oder zu erstatten \*).
In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached  statement \*).
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint \*).

Anlagen
Annexes
Annexes

Zurückgesandte Schriftstücke:
Documents returned:          Doppel des Ersuchens
Pièces renvoyées:

Gegebenenfalls Erledigungstücke:
In appropriate cases, documents establishing the service:
Le cas échéant, les documents justificatifs de l'exécution:

Ausgefertigt in     Dresden
Done at
Fait à

Unterschrift und/oder Stempel.
Signature and/or stamp.
Signature et/ou cachet.

am        06.10.2016
the
le

OBERLANDESGERICHT DRESDEN

\*) Unzutreffendes streichen.
  Delete if inappropriate.
  Rayer les mention inutiles.

EX 1  PG 7

# REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| **Rick Hamilton**<br>**633 Yesler Way**<br>**Seattle, WA 98104**<br>**United States of America**<br><br>Authorized applicant pursuant to public law 97-351 of Feb. 26, 1983<br>which amended rule 4(c) 2(a) Federal Rules of Civil Procedure | **PRASIDENT DES**<br>**OBERLANDESGERICHTS DRESDEN**<br>**SCHLOSSPLATZ 1**<br>**01067 DRESDEN,**<br>**GERMANY** |

The undersigned applicant has the honour to transmit-in-duplicate the documents listed below and, in
conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof
on the addressee, i.e.;

(identity and address)

**BOSSLAND GMBH, A FOREIGN CORPORATION**
**LEIPZIGER STR; 72**
**08056 ZWICKAU**
**GERMANY**

DOB:          Phone:

☒ (a) in accordance with the provisons of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5):*
_____
_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of aticle 5).*

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the
annexes* – with a certificate as provided on the reverse side.

Hearing Date:

List of Documents:

**SUMMONS IN A CIVIL ACTION; COMPLAINT
FOR (1) TRAFFICKING IN CIRCUMVENTION
DEVICES (2) INDUCEMENT TO INFRINGE
COPYRIGHT (3) CONTRIBUTORY COPYRIGHT
INFRINGEMENT (4) VICARIOUS COPYRIGHT
INFRINGEMENT (5) INTENTIONAL
INTERFERENCE WITH CONTRACTUAL
RELATIONS (6) UNFAIR COMPETITION; CIVIL
COVER SHEET; REPORT ON THE FILING OR
DETERMINATION OF AN ACTION OR APPEAL**

Done at Seattle, Washington USA, on Jul 19 2016

Signature and/or stamp



Tracking #: 0012548202



USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

EX 1  PG 8

# SUMMARY OF THE DOCUMENT TO BE SERVED

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**

### (article 5, fourth paragraph)

Name and address of the requesting authority:     **Rick Hamilton**
                                                **633 Yesler Way**
                                                **Seattle, WA 98104**
                                                **United States of America**

Particulars of the parties:

**BLIZZARD ENTERTAINMENT, INC., A DELAWARE CORPORATION**     vs.     **BOSSLAND GMBH, A FOREIGN CORPORATION, AND DOES 1 THROUGH 10, INCLUSIVE**

## JUDICIAL DOCUMENT*

Nature of the document:
To give notice to the Defendant of the institution against them of a civil lawsuit.

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
Plaintiff is seeking to recover civil damages and other relief, amount to be determined in court.

Date and place for entering appearance:*
Defendant has twenty-one days from receipt of the accompanying Summons to make a written appearance, address is noted on the Summons.

Court which has given judgment:*
n/a

Date of judgment:*
n/a

Time limits stated in the document:*
    Hearing Date:

## EXTRAJUDICIAL DOCUMENT*

Name and purpose of the document:
n/a

Time limits stated in the document:*
n/a



Tracking #: 0012548202

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

# EXHIBIT 2



MITCHELL SILBERBERG & KNUPP LLP
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Marc E. Mayer
A Professional Corporation
(310) 312-3154 Phone
(310) 231-8354 Fax
mem@msk.com

March 7, 2017

**VIA E-MAIL ONLY (MATRICCIANI@ICLOUD.COM; SSMELSER@YUKELAW.COM; NHOFFMAN@YUKELAW.COM)**

Anthony Matricciani, Esq.
The Law Office of Anthony G. Matricciani
6400 Hollis Street, Suite 4
Emeryville, CA 94608

Steven D. Smelser, Esq.
Nicholas J. Hoffman, Esq.
Yukevich Cavanaugh
355 S. Grand Ave., 15th Floor
Los Angeles, CA 90071-1560

Re:    **Blizzard Entertainment, Inc. v. Bossland GMBH**

Dear Counsel:

As you know, on February 14, 2017, Mr. Matricciani advised me over the phone that Bossland (despite having appeared through counsel to contest jurisdiction) would not be further defending this lawsuit, would not file an answer to the Complaint, and thus intended to knowingly permit its default to be taken. Thus, on February 16, 2017, at our request, the court clerk entered default against Bossland.

We are writing to advise you and your client that we shortly will be filing a motion for default judgment. Our motion will seek an award of monetary damages and attorneys' fees, as well as an order enjoining Bossland from distributing or selling any of the products at issue in the United States and from selling, transferring, "open sourcing," or otherwise disseminating source code for any of the products at issue.

Please confirm to us that your client does not intend to oppose any such motion and likewise intends to comply with any final judgment in this action. Also, since you remain counsel of record for Bossland, we trust that you will advise (or have advised) your client of its obligations to comply with any judgment, and of the potential consequences of any failure to comply.

Additionally, we wish to remind you and Bossland that because this action remains pending, Bossland (and you) are under a continuing obligation to preserve all evidence pertaining to this matter.

8677276.2/42554-00043

11377 West Olympic Boulevard, Los Angeles, California 90064-1683
Phone: (310) 312-2000 Fax: (310) 312-3100 Website: WWW.MSK.COM

EX 2 PG 10



Anthony Matricciani
Steven D. Smelser
March 7, 2017
Page 2

Please feel free to give me a call if you wish to discuss this matter further.

Sincerely,

Marc E. Mayer
A Professional Corporation of
MITCHELL SILBERBERG & KNUPP LLP

MEM/sgd

# EXHIBIT 3

# ANTHONY G. MATRICCIANI

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 HOLLIS STREET, SUITE 4 | EMERYVILLE, CALIFORNIA 94608
TEL. 510 619-6662
matricciani@icloud.com

March 13, 2017

**VIA E-MAIL**

Marc E. Mayer
Mitchell Silberberg & Knupp LLP
11377 West Olympic Boulevard
Los Angeles, California 90064-1683
mem@msk.com

Re:   *Blizzard Entertainment, Inc. v. Bossland GmbH*
United States District Court, Central District of California
Civil Action No. 8:16-cv-01236-DOC (KESx)

Dear Mr. Mayer:

In response to your letter of March 7, 2017, I confirm that Bossland GmbH does not intend to oppose a motion for default judgment.

Sincerely,

Anthony G. Matricciani

cc:   Steven Smelser
Nicholas Hoffman
Jesko Onken

# EXHIBIT 4



# Bossland GmbH

www.thebuddyforum.com

## Bossland v. Blizzard, the never ending story

3 min read

Greetings Buddies,

there was no update for a long time, so let me update you a bit then.

**Germany**

As you might know, or might not know, two cases where at trial at the Federal Court of Justice of Germany, the highest german court.

One case was decided prety fast, on the same day. There the judges have cut a judgement, the way, that only if three things are fulfilled, only then there is a copyright infringement. The sole watching of a video is not a copyright infingement.

Now imagine - it actually was in this case - until the Federal Court of Justice of Germany removed the "or" before the "and" watching on the monitor.

As a result, you would say... WHAT?!?! Yes, anyway, it something to clear out.

The much more important case, will be decided January 12th 2017, so the court said.

How that one goes, one can only speculate. So lets wait and see. It is the Honorbuddy case.

Pending,

we have two more pending cases at the Federal Court of Justice of Germany, it will take some time until the court decides wheither they are worth to be reviewed. One decision was even moved from 8th December 2016 to 27th April 2017.

Let me speculate here, i believe it is because the court has to first decide the Honorbuddy case until 12th January, but with the decision it is not always the whole written judgement, this one can also take weeks or months.

And im my opinion, depending on the Honorbuddy case, the court will continue to bring the remaining cases on the line. As far there are two pending ones and at least two more might get to the court over then next few years.

**United States of America**

Congratulations to your new president. Some might have notices, that Blizzard is trying to sue us in the US - asking for a jury trial - and that the case is still pending. There is not much to say there at this moment.

Kotaku was so free to publish the whole lawsuit here:

https://torrentfreak.com/images/blizzard-bossland.pdf

**United Kingdom of Great Britain and Northern Ireland**

Her Majesty's High Court of Justice in England has received two lawsuits from Blizzard. As things work much faster in the UK, we expect a first meeting at the High Court somewhen in January 2017.

The first case is a temporary injunction against Watchover Tyrant, the second case is a lawsuit vs any bots we created that automate gameplay in Blizzard games.

Such an escalation ? Why? I believe it did not go well with Blizzard and their expectations of the Federal Court of Justice of Germany.

EX 4  PG 13

highest courts have a scimilar opinion on copyright infringement, breach of contract and unfair competition.

Otherwise, it would be a good call to ask the European Court of Justice, that would clarify things in the whole European Union at once.

On the bright side, i was never yet in London, i hope January is warm and dry.

As an ending word, sorry at you all Buddies for your temporary loss. We hope you will still continue pay World of Warcraft and pay your monthly WOW subs!

---

Bossland GmbH published this 11 Nov 2016          ☆ 0 stars          💬 5 comments

## Pokefarmer - our Pokémon Go Bot and its beginning

5 min read

It is interesting how business models change, Bossland GmbH started as a bot developer back in 2009, now we solely publish bots.

Done projects are brought to us, and we distribute them. If we where not in the botting business, a business that still works and fights for its legal parameters, we could be something like Kalypso more or less.

But we are here, and we will stay here until we have defined the very last part of the law. At least in Germany and hopefully giving the European Union a head start into 3rd party development regulations.

It seems like the main decisions are to be made soon by the Federal Court of Justice of Germany. To be exact on 6th October 2016 at this very court in Karlsruhe, Germany.

But now back to Pokefarmer. Brought to us as a finished project, all we had to do is, to give it to our users. And they liked it. But within the last two weeks a few more things happened.

Niantic, developer of Pokémon GO, decided to chance their API and cripple all the 3rd party services that where out there. Not only sniper cheats, that allow you to catch Pokémon at a place where you are not, but also radar websites such as PokeVision, PokeHound and also many many other aside with bots.

The Pokémon Company International, Inc. started sending C&D letters and needed just to wait a bit, everyone was afraid and closed down, and the ones that where not contacted also closed down, because they where afraid to be the next on the list.

We tried to reach them all and make them continue what they do. We did fail in most cases, it seems they all where too afraid, some where also stupid, they used images that do not belong to them, so they obviously where liable for copyright infringements. Some just where not happy to add headaches to a free project and handle such, lets call it **bullshit**.

Now, two weeks later, our portfolio looks like this:

**Pokefarmer** is our main product, launched by us

**Poke-Bot** is the old Mygobot community, we managed to continue with the forum, while the page was taken down

**Pokereporter** is our crowd based tool, that with the help of our botters shows all available Pokémon in the world, at least where our users farm them, and all live - you could just run the website that way and catch them manually,

**Necrobot.io** is the website of the well known Github project Necrobot, with 100k discord users and 500k downloads a day, apparently they also thought of giving up instead of going into legal battles. Now we run it.

Everyone else is welcome to join us. If you have something interesting, just contact us. If you received a C&D, just contact us.

I will not get into any details about contracts or laws here, because one could argue for months about the different viewpoints. I will let the courts decide on all that.

Meanwhile more and more people start to play Pokémon Go, over 100 million worldwide, which actually is outdated data.

dint, but using modern terms, a restricted view, lets say 1 german 1 square kilometer, 15.000 users in Germany, all these have to play Pokémon Go there. Pokémon Go was released in August in Germany and that weeks after still 7.1 million players, so that is already 11 percent of the German population and 2 million have already paid ingame.

According to Statista, 40.8 percent of the German population lives in cities or villages with less than 20.000 population.I hope you are not one of them, because if you where, and you would live in Mosel near Zwickau, you will only have 3 Pokéstops in your village. You would need to walk for 6 kilometers to arrive in Zwickau and be able to visit Pokéstops at higher density.

But even then, while i used our bot in Zwickau, i could only level at the speed of 20k XP/h, if i would live in NY and run the bot in Central Park, it would be 60k XP/h or three times more.

Now imagine you are that pal in Mosel near Zwickau, you would find that very fair wouldn't you? But its not only you, it is nearly half the population in Germany that has this issue. Pokéstops are not based on a flat factor of X Pokéstops for X square kilometers. They are based on density and sights. Here in Zwickau probably 10 percent or more of the Pokéstops are painted power distribution boxes. Thanks Google for that.

Back on topic, the arguments that Niantic brings, are wrong and completely false.

1. There is no fair play, the game itself is not made to be fair, i will not go into each single detail there.

2. 3rd party services do not harm their infrastructure, they increase their income. I would be really interested to see a graph that does not only show the decrease of traffic they showed but to compare it to the income graph at the same time. At least until the time where 3rd party developers could again use the API to distribute their services.

3. Bots  or botters do not harm the game, they increase its revenue and they bypass boring periods. I am sure botters pay equally or even more to play Pokémon Go. Forbes Article

and many more, but going into detail here is also pointless, as this again, courts will decide upon.

With that said, Pokefarmer has now over 60.000 customers and growing.

And we hope Niantic, Google, The Nintendo Company and whoever is part of this wonderful game still continues to make it great as we will still continue to give the users what they need to make it even greater.

Bossland GmbH published this   15 Aug 2016                                    ☆  11 stars        💬  7 comments   📷

## How to play Pokémon Go on forbidden places

2 min read

As first let me show you some recent headlines:

1. Pokémon Go players urged not to venture into Fukushima disaster zone
2. Don't Even Think About Playing 'Pokémon Go' in Saudi Arabia
3. Manchester United players are now banned from playing Pokemon Go on certain days
4. Finnish soldiers forbidden to play Pokemon Go in barracks
5. Playing Pokemon Go Is Forbidden During Rihana's Concert
6. TEEN CRASHES CAR INTO SCHOOL WHILE PLAYING POKEMON GO
7. 'Please stop playing Pokemon at Germany's Holocaust sites'
8. Pokémon GO tourists rescued from Barcelona tunnel
9. What's troubling athletes arriving in Rio? No 'Pokemon Go'

There are so many places where one could walk into danger and risk his life playing Pokémon Go. The perfect solution would be to avoid such places and send a robot out there, to finish the needed tasks and catch the rare Pokémon.

Another view of the Pokémon hystery is given by Forbes - Dangerous Pokémon GO Bots Can Solve Addictive App's Biggest Flaw

With that said, i am making it short. Use Pokémon Go to take a walk to all the places you know and you been.

If you want to try something new, like walk into the forrest, the jungle, up the hill, into the minefield - please use the tools that save your lifes.

Pokefarmer is one of them, made by Bossland GmbH, working like a charm.

**PÓKÉMON GO BOT**

# PokeFarmer

Bossland GmbH  published this  29 Jul 2016          ☆ 2 stars          💬 0 comments

## Blizzard devastated, clutching at any straw

4 min read

Yesterday, a Author at Torrentfreaks informed me about a new lawsuit from Blizzard. It was interesting to see that at all. And I was sure, this one is because it seems soon to be over for Blizzard.

And now there are plenty of news about it, like here:

https://torrentfreak.com/blizzard-sues-overwatch-cheat-maker-for-copyright-infringement-160704/

http://kotaku.com/blizzard-taking-overwatch-cheat-maker-to-court-1783098926

http://arstechnica.com/tech-policy/2016/07/blizzard-ups-the-ante-against-overwatch-cheats-by-filing-lawsuit/

and many more ...

But lets get a bit more detailed into it. It is not, that there ain't plenty ongoing legal battles in Germany already.

Now Blizzard wants to try it in the US too. One could ask himself, why now and not back in 2011. Why did Rod Rigole even bother to fly to Munich and drive with two other lawyers 380 km to Zwickau. Why not just sue us in the US five years ago, especially at his beloved courts in California?

That question can be explained a bit later. Lets now look at what this suit is about.

US courts in general think they can decide about the future of anyone, however even they have regulations. There are few ways how a company could be sued in the US. One of them are the **"Long-arm Statutes"**, and Blizzard surely tried it the following among other writings:

(d) Defendants have entered into, and continue to enter into, hundreds or thousands of contracts with individuals in the United States and in the State of California,

(e) Defendants employ or engage individuals residing within the United States to create, code, develop, test, and support the Bossland Hacks;

(f) Defendants contract with numerous entities located in the United States and the State of California in connection with their business. This includes,

for example, domain name registries, hosting or content delivery services, and credit card processors and merchant banks; and

(g) Defendants distribute the Bossland Hacks via content delivery networks and servers located in the United States and the State of California.

That is *tactically excellent*, if it just where true, to make the **"Long-arm Statutes"** to work. But none of that is true and all of that is very vague, perfectly made for the court to believe. Neither we have employees in the US or in California, nor do we host our websites and download portals in the US. And we never used CDN, our french servers can handle it very well. But nice try.

Then there is the „Tag Jurisdiction" based on U.S. Supreme Court im Fall Pennoyer v. Neff (1878). As you can see, this one is pretty old, for it to work, the person in interest must be in the state or country where he is to be sued. Best known case here is  Burnham v. Superior Court of California from 1990.

And of course, if the company has its residence in the US. But we for sure have no residence there yet. Anyhow, lets assume such a lawsuit passes the court and a company gets sued in the US, that would lead to payments of **Punitive Damages**. Everyone knows the MDY case and the Ceiling Fan cases, one for $6M, the other one for $7M in **Punitive Damages**. However,

EX 4  PG 16

clause is written in n § 328 Abs. 1 Nr. 4 ZPO, Art. 45 i.V.m. Art. 34 Nr. 1 EuGVU and Art. 34 Nr. 1 EuGVVO.

But back to what made Blizzard to do this stupid move, again if even real, as i am not sure this will get any far.

They lost the suit of Heroes of the Storm in Germany, where they paid back Bossland GmbH lawyer costs and court costs in May 2016.

**And the Federal Court of Justice of Germany will have its hearing at 6th October 2016**. Interesting thing here is, that there will be two cases discusses at the same time, with 4 different parties.

Blizzard Inc. vs Bossland GmbH  (Honorbuddy case)
Blizzard SAS vs Zwetan Letschew (personal liability case) - this one was accepted to be appealed at the Federal Court of Justice of Germany, after the Higher Regional Court of Dresden disallowed us the appeal.

In my eyes, this all are good points to look into a bright future. And it is only three months away. I really look forward to see what the highest German court has to say, as it won't be the only two judgements they will do, there are still three more suits on their way to the highest court.

You can read the translated judgement here: http://www.stormbuddy.com/index_win.html
Bot for HotS case that we won.

The invitation to the Federal Court of Justice of Germany: http://blog.bossland-gmbh.com/2016/federal-court-of-justice-trial

Bossland GmbH published this 05 Jul 2016                                         ☆ 9 stars        💬 8 comments

## Federal Court of Justice Trial



Bossland GmbH published this 05 May 2016                                    ☆ 0 stars        💬 1 comment

Just got word from the Federal Court of Justice.

They appointed two cases at 6th October 2016, 9:00 o'clock, Room H 123, Herrenstr. 45a, 76125 Karlsruhe

The Honorbuddy case:

312 O 390/11 Copyright Law, Honorbuddy, lost 85 % - won 15 % and appealed

-- 3 U 86/13 Copyright Law, Honorbuddy, lost 70 % - won 30 % (up 15%) and appealed

-- I ZR 253/14, Copyright Law @ Federal Court of Justice, in process

The personal liability case:

05 O 1155/13 Personal Liability, Copyright and Contract Law, lost and appealed

-- 11 U 1127/14 Personal Liability, Copyright Law, lost, no appeal allowed

-- I ZR 25/15 Personal Liability @ Federal Court of Justice, non-admission complaint accepted, in process

Bossland GmbH published this 05 May 2016                                    ☆ 2 stars        💬 1 comment

## Bossland GmbH vs Blizzard SAS (05 O 1954/15)

3 min read



On 5th April 2016 there was another hearing between us and Blizzard,

**Prologue**

We sued them, as they did show a video in one of the hearings, how they used Honorbuddy, even tho forbidden to do so. They where forbidden to use Honorbuddy and Demonbuddy, as we withraw any licence they would have.

Due to a court judgement by the Dresden Higher Regional Court, World of Warcraft is a game and its audience is solely private individuals. Since WOW is just to be used private, so can Honorbuddy be used only by individuals, as they are the only eligible group that can use WOW in frist place.

And that means that Blizzard had never the right to use Honorbuddy/Demonbuddy, but if they had, the moment we give notice to them, that would have been it. But no, they still continue to

EX 4  PG 18

At that point only law can make them stop. ... them.

<u>The Hearing</u>

The hearing itself lasted less than 60 minutes and only the chief judge and our lawyer discussed, Blizzard lawyers did not say anything.

The chief judge had the opinion that § 45 UrhG (copyright law) would allow a party to create a copy to be used in court. What we believe is, that § 45 UrhG gives the court the autority to do something that would not be legal, but just in the court room and to prove something. And not that everyone whould have the right to do it outside the courtroom.

Imagine, if § 45 UrhG would be the way the head judge would see it, then:

Lets say Oracle and SAP have a dispute in court, then one party could go home, reverse engineer the other party's software and use what they gathered for their case. In the very same time a 3rd party would look over their shoulder, take what they need and create a copy of the opponents software. This would be legal, because there was no control on what the party in question did and what they did not do, and if they followed any copyright laws. § 45 UrhG has to be construed closely.

The right use of $ 45 UrhG would be, one party thinks that their property (a photo) was stolen and modified. To prove this accusation they could attach a copy of the stolen ptoho in their writ to the court, this would be allowed.

In our case this would mean, that Blizzard could give one copy of Honorbuddy to the court, and the court has then to start it and use it and decide if there is something wrong.

As the court will decide in three weeks, there is not much to say now. But no matter how the court decides, i see only a positive outcome for us and our strategy.

By the way, if any employee of Blizzard Inc. reads this, a new temporary injunction is on its way to Irvine, CA.

Next case, Demonbuddy - 10th May

Bossland GmbH published this 07 Apr 2016      ☆ 0 stars      💬 0 comments

# The funny temporary scoring in Bossland vs Blizzard

1 min read

Final statistics (based on final decisions where no appellate can be lodged):

**WE 2 - THEM 3**

Temporary statistics (based on not yet final decisions, all appealed):

**WE 1.83 - THEM 2.17**

Bossland GmbH published this 04 Apr 2016      ☆ 0 stars      💬 0 comments

# From years back - Year 2016.Q1 aka Port Royal

4 min read



And the story continues with,

the first quarter was quite busy. It seems we are going into crunch mode.

Lets go over each suit again :]

Our first case in Hamburg - we hope that the Federal Cour of Justice appoint a hearing this year - nothing new yet in Q1. However Blizzard pulled some strange tactics, trying to dry us out of

them by with a statement deadline of two weeks. Yes, very strange, as all fine requests are just about the one and the same thing, and the fine request is yet to be decided by the Hamburg Higher Regional Court.

312 O 390/11 Copyright Law, Honorbuddy, lost 85 % - won 15 % and appealed

-- 3 U 86/13 Copyright Law, Honorbuddy, lost 70 % - won 30 % (up 15%) and appealed

-x 3 W 86/14 Proxy, VPN, DE Version, 25.000 EUR fine asked by Blizzard, in process

- no attorney docket, Proxy, VPN, 50.000 EUR fine asked by Blizzard on 30th January 2016

- no attorney docket, Proxy, VPN, 50.000 EUR fine asked by Blizzard on 15th February 2016

- no attorney docket, Proxy, VPN, 50.000 EUR fine asked by Blizzard on 14th March 2016

-- I ZR 253/14, Copyright Law @ Federal Court of Justice, in process, no date

Our second case in Hamburg - Demonbuddy - will be dealth with soon, i will cover it on 10th May 2016.

312 O 322/12 Copyright Law, Demonbuddy, temporary injunction, lost and appealed

-- 3 U 125/12 Demonbuddy, **lost the appeal – final**

-x 7 W 62/13 Demonbuddy, 10.000,00 EUR fine asked by Blizzard, lost & paid

- no attorney docket, Proxy, VPN, 50.000 EUR fine asked by Blizzard on 15th February 2016

-> 312 O 32/13 Demonbuddy principal proceeding, in process, dated 10th May 2016

The Copyright suit in Munich is still on its way to the Federal Court of Justice, i am not sure if there will be a decision if the appeal will be allowed untill end of 2016.

33 O 26527/13 Contract Law, TOS / EULA, lost 20 % - won 80 % and appealed

-- 29 U 3427/14 Contract Law, TOS / EULA, lost 30 % - won 70 % - no appeal allowed

-- I ZR 167/15, Contract Law @ Federal Court of Justice, non-admission complaint sent

The personal liability case got some updates. Here you might see a strange change, while we lost the split case at the Zwickau Regional Court, the Dresden Higher Regional court found that we win 5/6 of the case and lose 1/6 of it. We are not really happy with that decision, we expected to win it all. The court also refused once again to allow us to appeal. We are now asking the Federal Cour of Justice if our non-admission complaint will be accepted by them, as the first already was.

05 O 1155/13 Personal Liability, Copyright and Contract Law, lost and appealed

-- 11 U 1127/14 Personal Liability, Copyright Law, lost, no appeal allowed

-- I ZR 25/15 Personal Liability @ Federal Court of Justice, non-admission complaint accepted, in process, no date

7 O 646/14 Split Contract Law Case, lost and appealed

-- 14 U 812/15 Contract Law Case, lost 17 % - won 83%, no appeal allowed

-- I ZR 44/16 Personal Liability @ Federal Court of Justice, non-admission complaint, in process

Now everyone is probably waiting to hear about **Stormbuddy** :] Now that was funneh. **WE WON!**

The whole Stormbuddy story can be read here.

7 O 509/15 Contract Law, Stormbuddy, temporary injunction, lost and appealed

-- 14 U 1599/15 Contract Law, Stormbuddy, we won, case dismissed, final

-X 14 W 1110 15 Proxy, VPN, 30.000 EUR fine agreed by court of appeals

-X 14 W 60/16 Proxy, VPN, 30.000 EUR fine agreed by court of appeals, rejected by court of appeals

As you can read, i am writing this overview a day before this hearing:

05 O 1954/15 Copyright Law, Honorbuddy & Demonbuddy, dated 5th May 2016

You will soon read about it, its nature and how it went.

Now i think back to good old times, where Glider was sued - one suit and one countersuit.

I think back on good old Pocketgnome times, we offered Pocketgnome to by them up, they thought they had better chances alone. You know the story - one suit one countersuit.

There is a summaryhow it looks like at our place:



Bossland GmbH published this 04 Apr 2016            1 star        4 comments

# From years back - Year 2015 aka Shallow Water

6 min read



And the story continues with

Suit and Post continues with some success news i forgot to mention in the first storyline.

There was this case in Hamburg, that Blizzard Inc. won, it was the 24th May 2013, they just needed to pay 670.000,00 EUR to the court treasury in order to forbid usage of Honorbuddy in Germany. Honorbuddy in that time made 20 % of its income in Germany, i was aware that at some point Blizzard Inc. might pay the guarantee...

But months passed by and nothing changed, then one day, i just landed at a place where i planned to spend two weeks and have some holidays.

So i just landed and got my baggage, my phone ringed. Lawyer was on the other end and informed me, that the guarantee was paid. Meaning effective immediately, sales had to be stopped. From the airport straight to the hotel and brain at maximum. It took us just few days and we came up with the perfect solution. Honorbuddy DE Version, i am sure Blizzard Inc. was not pleased at all. But in the end, it was their decision to write the suit the way they did.

Now back to 2015,

("--" means appeal, "->" means the temporary injunction got its principal proceeding, "-x" means fine asked by opponent)

Starting with the Honorbuddy Case in Hamburg, now this one began 2011, by now the following happened. We won few more charges and the appeal to the highest German court was allowed.

312 O 390/11 Copyright Law, Honorbuddy, lost 85 % - won 15 % and appealed

-- 3 U 86/13 Copyright Law, Honorbuddy, lost 70 % - won 30 % (up 15%) and appealed

-x 3 W 86/14 Proxy, VPN, 10.000 EUR fine asked by Blizzard, in process

-- I ZR 253/14, Copyright Law @ Federal Court of Justice, in process, no date

The Demonbuddy Case did not go as good so far, also due to be a temporary injunction. We are looking forward to see what happens on 10th May 2016. The reason of losing the temporary injunction is gone, there is no RMAH and no AH anylonger in Diablo 3.

~~312 O 322/12 Copyright Law, Demonbuddy, temporary injunction, lost and appealed~~

~~-- 3 U 125/12 Demonbuddy, **lost the appeal - final**~~

-x 7 W 62/13 Demonbuddy, 25.000,00 EUR fine asked by Blizzard, in process

-> 312 O 32/13 Demonbuddy principal proceeding, in process, dated 10th May 2016

This suit and counter-suit is all about the Blizzard Bnet, its TOS & EULA, we lost the small case and did not bother to go further as the bigger one is much more interesting in that matter and opens us a lot of options. The main issue with this "law battles" is, that Blizzard writes a lot of stuff that is not true or completely irrelevant. We had a good standing, winning 80 % of this case with a value of dispute of 1.000.000,00 EUR. However the court of appeals thought we where selling a package of Blizzard property and our Bot in one package, because at some point Blizzard really wrote that in their suit and we missed it. That is the reason we got down to 70 % winning the case. The Court of Appeals did not want to push this one to the Federal Court of Justice, so we did. Int still in process.

~~33 O 4330/12 Contract Law, WOW Accounts, lost and appealed~~

~~-- 29 U 31/14 Contract Law, WOW Accounts, **lost the appeal - final**~~

33 O 26527/13 Contract Law, TOS / EULA, lost 20 % - won 80 % and appealed

-- 29 U 3427/14 Contract Law, TOS / EULA, lost 30 % - won 70 % - no appeal allowed

-- I ZR 167/15, Contract Law @ Federal Court of Justice, non-admission complaint sent

Our failed attempt to kill the RMAH because of Money Laundering Laws, the court simply found that we are no competitors. Interesting fact is, that every other court, whenever Blizzard sues of course, finds us to be competitors. It was at least a nice try.

~~31 O 594/12 Competition Law, D3 RMAH, **rejected and final - lost**~~

EX 4  PG 22

would explain a suit against a person for liability of a company. So here Blizzard is trying to sue me personally, not as the CEO of Bossland GmbH but as the person Zwetan Letschew, not related to any company. They believe to have found 3 accounts that they think where used by me personally. And with that accounts, they believe, i used to help program Honorbuddy. Then i gave all needed information to the Bossland GmbH. All this not in my function as CEO of the company, but as the person outside the company, a random guy. It seems the lower courts did follow this arguments. However, the Federal Court of Justice accepted the non-admission complaint and granted us ther appeal, this happens in only ~ 6.5 % of all cases they have. The main idea behind that suits was to gather some information about Bossland GmbH revenue, sales numbers and profits. And now they ask company for company internals from that random guy(me).

05 O 1155/13 Personal Liability, Copyright and Contract Law, lost and appealed

-- 11 U 1127/14 Personal Liability, Copyright Law, lost, no appeal allowed

-- I ZR 25/15 Personal Liability @ Federal Court of Justice,  non-admission complaint accepted, in process, no date

7 O 646/14 Split Contract Law Case, lost and appealed

-- 14 U 812/15 Contract Law Case, in process

312 O 192/13 Competition Law, D3 Gold, temporary injunction, lost and appealed

**-- 3 U 45/14 D3 Gold, Blizzard withdrew, we won the case**

There is not much to say about Stormbuddy, probably anyone of you heared the stories that involve Blizzard stealing our code. But not only that, they also tried to stop Stormbuddy sales worldwide. Please look at the word, tried, because next time you read a text from me, you will be surprised what happened.

7 O 509/15 Contract Law, Stormbuddy, temporary injunction, lost and appealed

-- 14 U 1599/15 Contract Law, Stormbuddy, in process

-x 14 W 1112/15 Proxy, VPN, 10.000 EUR fine asked by Blizzard, in process

Meanwhile Blizzard still continues using our software without having a licence for it, we sued them, to stop this unlawful acts.

05 O 1954/15 Copyright Law, Honorbuddy & Demonbuddy, dated 5th May 2016

Next to follow - From years back - Year 2016 aka Port Royal

Bossland GmbH published this 31 Mar 2016          ☆ 3 stars     💬 3 comments

Older »

EX 4  PG 23

# EXHIBIT 5

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLIZZARD ENTERTAINMENT, INC,, a Delaware Corporation,<br><br>      Plaintiff,<br><br>  v.<br><br>CEILING FAN SOFTWARE, LLC, an Ohio Limited Liability Company; BRIAN BECKER, an individual; STANTON FRASER, an individual; and DOES 1 through 10,<br><br>      Defendants. | CASE NO.   12-0144 JVS (JPRx)<br><br>Honorable James V. Selna<br><br>**JUDGMENT AND PERMANENT INJUNCTION** |

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 26 of 67   Page ID
Case 8:12-cv-00144-JVS-JPR   Document 153-1 Filed 10/18/13   Page 2 of 5   Page ID #:3750
#:316

1        Plaintiff Blizzard Entertainment, Inc. ("Blizzard") and Defendants Ceiling

2    Fan Software, LLC, Brian Becker, and Stanton Fraser ("Defendants") (collectively,

3    the "Parties"), having entered into a Stipulation for Entry of Judgment and

4    Permanent Injunction,

5

6        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

7

8    1.     Judgment is entered against Defendants for $7,000,000.

9

10   2.     Defendants and all persons acting under Defendants' direction,

11   supervision, and/or control (including but not limited to Defendants' authorized

12   agents, representatives and employees), will immediately and permanently cease

13   and desist from:

14

15   A.     Selling, reselling, distributing, reproducing, sharing, transferring,

16           processing payments for, licensing, activating, or otherwise

17           disseminating or making available to the public in any manner

18           (directly or indirectly) the software programs known as "Pocket

19           Gnome," "Pocket Goblin," "Shadow Bot," "Shadow Goblin" or any

20           "bot," hack, "cheat" or other software product whose use violates

21           Blizzard's Battle.net, World of Warcraft, or other Terms of Use

22           ("ToU") or End-User License Agreement ("EULA") (collectively,

23           "the Software");

24

25   B.     Developing, creating, modifying, updating, testing, or patching the

26           Software;

27

28   C.     Obtaining, possessing, accessing, or using the Software;

1

2      D.     Operating, hosting, serving, or linking to any website designed to

3                provide information to assist others in developing, obtaining, or using

4                any product whose use violates Blizzard's ToU or EULA, including

5                but not limited to the Software;

6

7      E.     Knowingly assisting, facilitating, or enabling any persons or entities,

8                directly or indirectly, to engage in any of the activities prohibited by

9                the foregoing Paragraphs 2(A) through 2(D); and

10

11      F.     Investing or holding any financial interest in any enterprise that

12                Defendants know is now, or planning in the future, to engage in any

13                of the activities prohibited by the foregoing Paragraphs 2(A) through

14                2(D).

15

16      3.     Defendants will take all necessary steps to immediately disable, and

17  deactivate all active licenses for, the Software.

18

19      4.     Defendants, and all persons under Defendants' direction, supervision,

20  and/or control are prohibited from transferring or assigning the Software or its

21  source code, to any individual or entity other than Blizzard, including by making

22  available or uploading the software to Google Code, or otherwise "open sourcing"

23  the source code for the Software.

24

25      5.     Defendants irrevocably and fully waive notice of entry of the

26  Judgment and Permanent Injunction and notice and service of the entered

27  Judgment and Permanent Injunction and understand, confirm, and agree that

28

2

1   violation of the Permanent Injunction will expose Defendants to all penalties

2   provided by law, including contempt of Court.

3

4        6.     If Defendants proceed with, and are successful in an appeal of any

5   issues based on this judgment as to liability or damages, Defendants shall not be

6   deemed to have waived their right to oppose Blizzard's motions in limine

7   including the motion to exclude the Defendants' expert witness.

8

9        7.     Nothing contained in this Judgment will limit the right of Blizzard to

10   seek relief, including without limitation, damages, for all violations of Blizzard's

11   TOU and EULA by Defendants occurring after the date of this Judgment.

12

13        8.     Any company or entity that Defendants own or operate in the future

14   shall be bound by the provisions of this Judgment and Permanent Injunction.

15

16        9.     This Permanent Injunction will be deemed to have been served upon

17   Defendants at the time of its execution by the Court.

18

19        10.     The Court finds there is no just reason for delay in entering this

20   Judgment and Permanent Injunction and, under the Federal Rule of Civil

21   Procedure 54(a), the Court directs immediate entry of this Judgment and

22   Permanent Injunction against Defendants.

23   //

24   //

25   //

26   //

27   //

28   //

1    11.    The Court will retain jurisdiction of this action to entertain any further

2  proceedings and to enter any further orders as may be necessary or appropriate to

3  implement and enforce the provisions of this Judgment and Permanent Injunction.

6    IT IS SO ORDERED.

8  DATED: October 18, 2013

The Honorable James V. Selna
United States District Judge

EXHIBIT 6

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RIOT GAMES, INC., a Delaware Corporation,

        Plaintiff,

        v.

STEFAN DELGADO ARGOTE a/k/a "Ohm" and "Burberry"; MATTHIAS OLTMANN a/k/a "Joduskame," "Rolle3k," and "Sheppard"; TYRONE TOM PAUER a/k/a "Beaving"; CHACHANI MISTI Y PICHU PICHU S.R.L., a company organized under the laws of Peru; and DOES 1-10, inclusive,

        Defendants.

CASE NO. 2:16-cv-5871-RSWL-AJW

Honorable Ronald S.W. Lew

**PERMANENT INJUNCTION, CONSENT JUDGMENT, AND DISMISSAL WITHOUT PREJUDICE [44]**

///

///

///

Mitchell
Silberberg &
Knupp LLP

Pursuant to the Parties' Stipulation dated February 28, 2017, the Court hereby orders that judgment is entered against defendants Stefan Delgado Argote, Matthias Oltmann, Tyrone Tom Pauer, Chachani Misti y Pichu Pichu, S.R.L., Jaime Rosalino Prado Lira, and Alquiles Ivan Delgado Argote (collectively "Defendants") as follows.

**IT IS HEREBY FOUND, ORDERED, ADJUDGED as follows:**

1.      Judgment shall be entered against Defendants on the First, Second, and Third Claims for Relief in the amount of ten million U.S. dollars ($10,000,000) from all Defendants, payable pursuant to the terms set forth in the Parties' Confidential Settlement Agreement and Release.

2.      Defendants, all persons acting under Defendants' direction or control (including but not limited to Defendants' agents, representatives, and employees), and those persons or companies in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise, shall immediately and permanently cease and desist from any of the following:

(a)      taking any steps on Defendants' own behalf or assisting others in creating, distributing or otherwise making available any software whose use infringes any of Riot's copyrights, patents, or trademarks (Riot's "Intellectual Property"), circumvents technological measures that control access to Riot's games, or violates Riot's Terms of Use ("TOU"), including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

Mitchell
Silberberg &
Knupp LLP

1

EX 6  PG 30

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 33 of 67   Page ID
#:1168
Case 2:16-cv-05871-RSWL-AJW   Document 45   Filed 03/02/17   Page 3 of 7   Page ID #:442

  (b)  obtaining, possessing, accessing or using any software whose use by Defendants infringes any of Riot's Intellectual Property, circumvents technological measures that control access to Riot's games, or violates the TOU, including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

  (c)  selling, reselling, or processing payments for any software whose use infringes any of Riot's Intellectual Property, circumvents technological measures that control access to Riot's games, or violates the TOU, including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

  (d)  assisting in any way with the development of software whose use infringes any of Riot's Intellectual Property, circumvents technological measures that control access to Riot's games, or violates the TOU, including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

  (e)  sharing, copying or distributing any software whose use infringes any of Riot's Intellectual Property, circumvents technological measures that control access to Riot's games or violates the TOU, including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

Mitchell
Silberberg &
Knupp LLP

2

EX 6  PG 31

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 34 of 67   Page ID
#:1169
Case 2:16-cv-05871-RSWL-AJW   Document 45   Filed 03/02/17   Page 4 of 7   Page ID #:443

(f)      publishing or distributing any source code or instructional material for the creation of software whose use infringes any of Riot's Intellectual Property rights, circumvents technological measures that control access to Riot's games or violates the TOU, including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

(g)      operating, assisting or linking to any website designed to provide information to assist others in accessing, developing or obtaining any software whose use infringes any of Riot's Intellectual Property rights, circumvents technological measures that control access to Riot's games or violates the TOU, including but not limited to the software product known as Leaguesharp, and any other software product designed to exploit or enable the exploitation of "League of Legends" or any other game owned, published, or operated by Riot or a Riot subsidiary;

(h)      investing or holding any financial interest in any enterprise which Defendants know or have reason to know is now, or intends in the future to be, engaged in any of the activities prohibited by this Judgment and Permanent Injunction.

(i)      playing any game owned, published, or operated by Riot or a Riot subsidiary, including "League of Legends."

(j)      reverse engineering, decompiling, packet editing, or otherwise manipulating without authorization, any game owned, published, or operated by

1   Riot or a Riot subsidiary, including "League of Legends," or providing assistance

2   to any person or entity engaged in such activities.

3

4        (k)    accessing any computer or account owned, controlled or possessed by

5   Riot or a Riot employee or any authorized agent or representative of Riot without

6   Riot's prior, written permission.

7

8        3.     Defendants shall take all necessary steps to transfer and assign to Riot

9   ownership of the following domain names:  leaguesharp.info, leaguesharp.me,

10   leaguesharp.org, botoflegends.net, botoflegends.org, leagueoflegendsscripts.com,

11   lolaccounts.io, and lolscripts.com.

12

13       4.     Defendants shall take all necessary steps to transfer and assign to Riot

14   the source code for the software product known as Leaguesharp pursuant to the

15   terms set forth in the Parties' Confidential Settlement Agreement and Release.

16

17       5.     Defendants are ordered to destroy any software product whose use

18   infringes any of Riot's Intellectual Property, circumvents technological measures

19   that control access to Riot's games, or violates Riot's Terms of Use ("TOU"),

20   including but not limited to the software product known as Leaguesharp, and any

21   other software product designed to exploit or enable the exploitation of "League of

22   Legends" or any other game owned, published, or operated by Riot or a Riot

23   subsidiary, pursuant to the terms set forth in the Parties' Confidential Settlement

24   Agreement and Release.

25

26       6.     Any company or entity that any Defendant controls in the future shall

27   also comply with the provisions of this Judgment and Permanent Injunction.

28

Mitchell
Silberberg &
Knupp LLP

7.     Defendants irrevocably and fully waive notice of entry of the Judgment and Permanent Injunction and notice and service of the entered Judgment and Permanent Injunction and understand, confirm and agree that violation of the Judgment and Permanent Injunction will expose Defendants to all penalties provided by law, including contempt of Court.

8.     Defendants irrevocably and fully waive any and all rights to appeal this Judgment and Permanent Injunction, to have it vacated or set aside, to seek or obtain a new trial thereon or otherwise to attack in any way, directly or collaterally, its validity or enforceability.

9.     Nothing contained in this Judgment and Permanent Injunction shall limit the right of Riot to seek relief, including without limitation damages, for any and all infringements by Defendants of Riot's Intellectual Property occurring after the date of this Judgment and Permanent Injunction.

10.     This Judgment and Permanent Injunction shall be deemed to have been served upon Defendants at the time of its execution and entry by the Court.

11.     The Court shall retain jurisdiction of this action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and enforce the provisions of this Judgment and Permanent Injunction.  Defendants consent to the personal jurisdiction of the United States District Court for the Central District of California for purposes of enforcing the Judgment and Permanent Injunction.

12.     The Court finds there is no just reason for delay in entering this Judgment and Permanent Injunction and, pursuant to Federal Rule of Civil

Mitchell
Silberberg &
Knupp LLP

5

1    Procedure 54, the Court directs immediate entry of this Judgment and Permanent

2    Injunction against Defendants.

3

4         13.    Riot's Fourth and Fifth Claims for Relief hereby are dismissed

5    without prejudice, each party to bear its own fees and costs.

6         The Clerk shall close this action.

7         IT IS SO ORDERED.

8

9    DATED: 3/1/2017                    s/ RONALD S.W. LEW

10                                      The Honorable Ronald S.W. Lew
                                        Senior U.S. District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

EX 6  PG 35

# EXHIBIT 7

1  ANTHONY G. MATRICCIANI (SBN 214730)
   *matricciani@icloud.com*
2  THE LAW OFFICE OF ANTHONY G. MATRICCIANI
   6400 Hollis Street, Suite 4
3  Emeryville, California 94608
   Telephone:  (510) 619-6662
4
   STEVEN D. SMELSER (SBN 180602)
5  *ssmelser@yukelaw.com*
   STEVEN S. VAHIDI (SBN 283951)
6  *svahidi@yukelaw.com*
   NICHOLAS J. HOFFMAN (SBN 284472)
7  *nhoffman@yukelaw.com*
   YUKEVICH | CAVANAUGH
8  355 S. Grand Avenue, 15th Floor
   Los Angeles, California 90071-1560
9  Telephone:  (213) 362-7777
   Facsimile:   (213) 362-7788
10
   Attorneys for Bossland GmbH
11

12              UNITED STATES DISTRICT COURT

13     CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

14

15  BLIZZARD ENTERTAINMENT,          CASE NO. 8:16-cv-01236-DOC-KES
    INC., a Delaware corporation,
16                                   **DECLARATION OF ZWETEN**
             Plaintiff,              **LETSCHEW IN SUPPORT OF**
17                                   **MOTION TO DISMISS**
        vs.                          **COMPLAINT FOR LACK OF**
18                                   **PERSONAL JURISDICTION**
    BOSSLAND GMBH, a foreign
19  corporation, and Does 1 through 10,
    inclusive,
20
             Defendant.
21

22       I, Zwetan Letschew, declare:

23       1.    I am one of the two managing directors of Bossland GmbH

24  ("Bossland"), which I founded in 2009.  The position of managing director is similar

25  to that of chief executive officer for an American company.

26       2.    As the founder and a Managing Director of Bossland, I have personal

27  knowledge of all its business activities.

28       3.    Bossland is a software developer and publisher that develops and

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 40 of 67   Page ID
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 2 of 20   Page ID #:104
#:1175

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telphone (510) 619-6662
Facsimile (510) 450-0801

publishes programs for the computer gaming community.  Pertinent to this litigation, Bossland sells the following programs:

    a. *Demonbuddy*, which is designed for use with Blizzard's *Diablo 3*;

    b. *Hearthbuddy*, which is designed for use with Blizzard's *Hearthstone*;

    c. *Honorbuddy*, which is designed for use with Blizzard Entertainment, Inc.'s ("Blizzard's") *World of Warcraft*;

    d. *Stormbuddy*, which is designed for use with Blizzard's *Heroes of the Storm*.

4.    Currently, due to an injunction ordered by a German court, Bossland cannot sell *Watchover Tyrant*, which is designed for use with Blizzard's *Overwatch*. However, Bossland ceased selling *Watchover Tyrant* prior to the injunction due to a technical performance issue.  (These Bossland programs are collectively referred to as the "Bossland Programs.")  In German courts, Blizzard has sought injunctions to prohibit the sale and distribution of *Demonbuddy*, *Honorbuddy*, *Stormbuddy* (the injunction has been denied), and *Watchover Tyrant*.  In United Kingdom courts, Blizzard has sought injunctions to prohibit the sale and distribution of *Demonbuddy*, *Honorbuddy*, *Stormbuddy*, and *Watchover Tyrant*.

5.    Bossland also develops and publishes programs for the gaming community that are not designed for use with Blizzard's products.  These programs include:

    a.    *Adenabuddy;*

    b.    *Archebuddy;*

    c.    *Buddywing;*

    d.    *Exilebuddy;*

    e.    *Pokefarmer;*

    f.    *Rebornbuddy;*

    g.    *Tankleader;*

    h.    *Wildbuddy*; and

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 41 of 67   Page ID
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 3 of 20   Page ID #:105
#:1176

i.    *Winterbuddy.*

**Bossland Is Not Domiciled In California**

6.    Bossland is a private corporation formed under the laws of Germany. Its principle place of business is Zwickau, Germany.  I direct and manage all of Bossland's business from its Zwickau, Germany office.  Bossland does not have any subsidiary and it does not exercise control over any business entity.

7.    Bossland has no place of business or employees in the United States.  It neither conducts nor solicits business in the United States, and it has neither sought to be nor been authorized, certified, or licensed to conduct business in the United States.

8.    Bossland has never designated an agent for service of process in the United States.

9.    Bossland has never owned, sold, or leased real property in the United States.

10.    Bossland does not keep, maintain, or store physical documents in the United States.  However, Bossland uses the Drop Box cloud-based service to store some of its documents, excluding software and source code.  Bossland does not know the physical location of the electronic versions of these documents.  Beginning December 2016, Bossland will store these electronic documents on German Drop Box servers, which have recently become available.

11.    Bossland has never paid United States or California taxes, it does not have a bank account in in the United States, and it does not have a telephone number or mailing address in the United States.

**Bossland Lacks Minimum Contacts with the United States and California**

12.    Contrary to the allegations of the Complaint, Bossland does not "conduct extensive and ongoing business with users in the United States and the State of California," or attempt to do so.

13.    Bossland's employees do not participate in trade shows or travel to the

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

3                                  8:16-cv-01236

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

United States on business.

14.    Bossland does not advertise its products other than describing its products on its websites, which provide a German address, German telephone number, and German facsimile number for contact information.   However, a purchaser may opt in to receive a newsletter from Bossland, which is distributed two to three times a year informing the newsletter subscriber of Bossland news, including new products.   The Bossland newsletter was created in July 2013 and has 7,467 subscribers worldwide.   Information concerning subscribers is limited to an e-mail address.

15.    I am responsible for creating the content for Bossland's websites.   Each Bossland product has its own website.   The websites are typically available in seven languages:   German, French, Spanish, Portuguese, Russian, Turkish, and English. However, due to time constraints, my knowledge of German and English, and the large number of those using English as a second language, the German and English website versions are usually the most current.

16.    The websites are accessible worldwide and do not target any geographical area.   However, some countries, like North Korea, may block access to the websites.

17.    The price for every Bossland product described on a website has always been stated in Euros only.

18.    Purchasing a Bossland product is subject to terms of service that include the following provisions:

Governing Law   Any claim relating to Bossland's web site shall be governed by the laws of Germany without regard to its conflict of law provisions.

Privacy Law   This website and it's [sic] owners take a proactive approach to user privacy and ensure the necessary steps are taken to protect the privacy of its users throughout their visiting experience. This website complys [sic] to all EU privacy laws and German national laws and requirements for user privacy.

4                                      8:16-cv-01236

**DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

1    This website does not use cookies and all the data processed on payment is
2    stored by Gate2Shop. This website only stores your email address to deliver
3    the software to you.

4        19.    Bossland also maintains an online forum ("Buddy Forum") that
5    provides information to purchasers about how to use Bossland's products. Buddy
6    Forum enables forum users to post comments and questions concerning Bossland's
7    products. Bossland does not solicit the comments or questions and it does not
8    acquire information indicating the residential status of anyone using the forum.
9    However, some forum members state a location on their profile, which may or may
10   not be accurate. Buddy Forum is available in eight languages: German, French,
11   Spanish, Russian, Turkish, Chinese, Korean, and English.

12       20.    According to information I received this month from Bossland's third-
13   party payment processor, purchasers associated with at least 101 countries have
14   purchased Bossland's products since October 14th. I would expect purchase
15   information for the period before July 2016 to indicate purchasers associated with
16   more than 101 countries.

17       21.    Bossland does not use a subscription model to sell its products. Rather,
18   it uses a licensing model. For example, a purchaser may purchase a monthly or one-
19   year license to use a Bossland product, and the purchaser will be billed once for the
20   monthly or one-year license. In June 2016, Bossland changed the lifetime license to
21   a yearly license, but it still offers a monthly license.

22       22.    When a customer makes a purchase from Bossland, the customer
23   provides an e-mail address and other information to a third-party payment processor.
24   Bossland's server acquires from the third-party payment processor's server the
25   transaction ID, date and time of purchase, product type, and e-mail address of the
26   purchaser. No other information, such as country of origin, residential address, or
27   billing information is acquired. Bossland associates the purchaser's e-mail address
28   with a product key.

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 40

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 44 of 67   Page ID
#1179
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 6 of 20   Page ID #:108

23.    Until approximately October 14, 2016, purchases had been processed through the third party Gate2Shop, which is based in Israel.  Gate2Shop ceased providing services to Bossland after receiving a letter from Blizzard's attorney, Marc Mayer, requesting that Gate2Shop terminate its relationship with Bossland and warning that Blizzard could take legal action against Gate2Shop.  I received a copy of Mr. Mayer's letter from Gate2Shop.  Attached as **Exhibit A** is a true and correct copy of Marc Mayer's August 12, 2016 letter to Gate2Shop and Safecharge International Group Ltd.

24.    All of Bossland's website domain names are registered through OVH France, a French company.

25.    All hosting is perfomed by OVH France and OVH Canada, a Canadian company.

26.    Bossland does not use content delivery networks, and it does not have a single server in the United States.

27.    Any customer service is provided through the Internet without Bossland acquiring information concerning the residence of a purchaser or having knowledge of the purchaser's residential status.

28.    Bossland has not acquired any information through technical support or customer service that provides whether a purchaser is a resident of California or the United States.  Nor does it attempt to acquire any commercially valuable information that it could use, for example, to develop or target a market or specific geographical area.  Pursuant to European Union law, Bossland only acquires the information necessary to address the purchaser's technical issue.

29.    It is impossible for Bossland to determine the location or residential status of a purchaser based on the purchaser's e-mail address.

30.    Due to the automated third-party processing of payments, Bossland has never knowingly sold a product or received monies from a person residing in California or the United States.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

6                                   8:16-cv-01236
**DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 45 of 67   Page ID
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 7 of 20   Page ID #:109
#:180

31.     Except for its legal counsel representing it in this civil action, Bossland
has never knowingly contracted with persons or entities residing in California with
the intention of such contracts being performed in California.

32.     Bossland does not use any of its resources or effort to make sales to
California or the United States.  It does not solicit purchases of its products from
anyone, regardless of their geographical location.

33.     Bossland has established independent contractor relationships with
persons it routinely uses for product development and customer support.  To my
knowledge only one independent contractor may reside in the United States, but not
in California.

34.     Bossland uses the services of an independent contractor, James Enright,
who may reside in New Jersey, but he has not performed work on any project related
to Blizzard's products since 2015.

35.     To my knowledge, none of the independent contractors providing
services to Bossland solely work on tasks for Bossland, and none of them are
authorized to conduct any business or perform any act on Bossland's behalf.

36.     In addition to using independent contractors, Bossland has a small staff
of employees.  None of Bossland's employees have ever been physically present in
California or the United States for any purpose related to the allegations in this case.

37.     Bossland does not contract with entities located in the United States for
any purpose.  Of course, Bossland has contracted with lawyers to represent it in this
civil action.

38.     Bossland has never prosecuted a lawsuit within the United States.

39.     Bossland has never directed any of its conduct at California or the
United States, and, prior to assisting its lawyers with the preparation of the motion to
dismiss, Bossland was not aware of how many people associated with the United
States are currently purchasing its products.

40.     While assisting my lawyers with the preparation of the motion to

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

THE LAW OFFICE OF ANTHONY G. MATRICCIANI

6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

dismiss, I reviewed purchase information from Gate2Shop and for the first time

learned of the percentage and number of purchases associated with the United States.

Previously, I had only reviewed purchase information that I needed to calculate taxes

pursuant to European Union laws, and therefore did not review purchases associated

with the United States.

41.    It is important to note that it is impossible to determine the residential

status of a purchaser using the information Bossland acquired from Gate2Shop.  The

information does not contain any residential information other than associating the

transaction with a country.   For example, the purchase information provides the

following information in a similar format:

Date       Time      Transaction Type Amount     Status      Product      Country  Email

2016-01-01 12:30:15 123456789  Sale   EUR 24.98 Approved honorbuddy Germany 1@12.com

42.    I assume Gate2Shop based its country classification of a purchaser on IP

address information.  However, even IP address information would not enable the

determination of a purchaser's residential status.   For example, a person may

purchase a product using an IP address associated with a certain country, but the

person may not be a resident of that country.

43.    The Gate2Shop information available to Bossland is not associated with

individual States within the United States.    Therefore, to estimate purchases

associated with California, I assume that 12.17% of purchases associated with the

United States are associated with California because California's population is

approximately 12.17% of the United States' population.  It is possible that actual

purchases associated with California are less than my estimates.    Information

enabling a distinction between purchases of the Bossland Programs and Bossland's

other products and whether a license was a full or trial license was not available for

every month, as noted below, because it was not contained in the data provided by

Gate2Shop.  The purchase information includes purchases of full licenses and trial

licenses, which trial licenses are priced at 1 Euro and 3 Euros.

8                                8:16-cv-01236

**DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 47 of 67   Page ID
#:1182
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 9 of 20   Page ID #:111

44. During July 2013, purchasers associated with the United States purchased 2,822 units of *all* Bossland products, of which 1,091 were trial licenses. These purchases represent 28.73% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 343 purchases associated with California. These potential purchases represent 3.50% of Bossland's total revenue for the month.

45. During August 2013, purchasers associated with the United States purchased 2,743 units of *all* Bossland products, of which 1,106 were trial licenses. These purchases represent 24.83% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 334 purchases associated with California. These potential purchases represent 3.02% of Bossland's total revenue for the month.

46. During September 2013, purchasers associated with the United States purchased 2,912 units of *all* Bossland products, of which 1,168 were trial licenses. These purchases represent 27.41% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 354 purchases associated with California. These potential purchases represent 3.34% of Bossland's total revenue for the month.

47. During October 2013, purchasers associated with the United States purchased 3,022 units of *all* Bossland products, of which 1,173 were trial licenses. These purchases represent 24.94% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 368 purchases associated with California. These potential purchases represent 3.04% of Bossland's total revenue for the month.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 44

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 48 of 67   Page ID
#:1183
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 10 of 20   Page ID
#:112

48.     During November 2013, purchasers associated with the United States purchased 2,810 units of *all* Bossland products, of which 1,098 were trial licenses. These purchases represent 24.07% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 342 purchases associated with California.   These potential purchases represent 2.93% of Bossland's total revenue for the month.

49.     During December 2013, purchasers associated with the United States purchased 3,700 units of *all* Bossland products, of which 1,376 were trial licenses. These purchases represent 29.74% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 450 purchases associated with California.   These potential purchases represent 3.62% of Bossland's total revenue for the month.

50.     During January 2014, purchasers associated with the United States purchased 2,543 units of *all* Bossland products, of which 983 were trial licenses. These purchases represent 24.75% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 309 purchases associated with California.   These potential purchases represent 3.01% of Bossland's total revenue for the month.

51.     During February 2014, purchasers associated with the United States purchased 2,000 units of *all* Bossland products, of which 1,227 were trial licenses. These purchases represent 29.20% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 243 purchases of *all* of Bossland's products associated with California.  These potential purchases represent 3.55% of Bossland's total revenue for the month.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6682
Facsimile (510) 450-0801

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 45

52.    During March 2014, purchasers associated with the United States purchased 6,513 units of *all* Bossland products, of which 1,324 were trial licenses. These purchases represent 31.29% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 793 purchases of *all* of Bossland's products associated with California. These potential purchases represent 3.81% of Bossland's total revenue for the month.

53.    During April 2014, purchasers associated with the United States purchased 8,611 units of *all* Bossland products, of which 3,560 were trial licenses. These purchases represent 29.52% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 1,048 purchases of *all* of Bossland's products associated with California. These potential purchases represent 3.59% of Bossland's total revenue for the month.

54.    During May 2014, purchasers associated with the United States purchased 7,489 units of *all* Bossland products. These purchases represent 25.26% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 911 purchases of *all* of Bossland's products associated with California. These potential purchases represent 3.07% of Bossland's total revenue for the month.

55.    During June 2014, purchasers associated with the United States purchased 5,197 units of *all* of Bossland products. These purchases represent 21.92% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 632 purchases of *all* of Bossland's products associated with California. These potential purchases represent 2.67% of Bossland's total revenue for the month.

56.    During July 2014, purchasers associated with the United States

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telphone (510) 619-6662
Facsimile (510) 450-0801

11                                                            8:16-cv-01236

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 46

1  purchased 4,456 units of *all* Bossland products.  These purchases represent 22.64%
2  of Bossland's total revenue for the month.  Assuming potential purchases associated
3  with California represent 12.17% of purchases associated with the United States,
4  there were 542 purchases of *all* of Bossland's products associated with California.
5  These potential purchases represent 2.76% of Bossland's total revenue for the month.

6      57.    During August 2014, purchasers associated with the United States
7  purchased 4,644 units of *all* Bossland products, of which 1,904 were trial licenses.
8  These purchases represent 19.22% of Bossland's total revenue for the month.
9  Assuming potential purchases associated with California represent 12.17% of
10  purchases associated with the United States, there were 565 purchases associated
11  with California.  These potential purchases represent 2.34% of Bossland's total
12  revenue for the month.

13      58.    During September 2014, purchasers associated with the United States
14  purchased 4,921 units of *all* Bossland products, of which 1,860 were trial licenses.
15  These purchases represent 10.81% of Bossland's total revenue for the month.
16  Assuming potential purchases associated with California represent 12.17% of
17  purchases associated with the United States, there were 599 purchases associated
18  with California.  These potential purchases represent 1.32% of Bossland's total
19  revenue for the month.

20      59.    During October 2014, purchasers associated with the United States
21  purchased 3,854 units of *all* Bossland products, of which 1,482 were trial licenses.
22  These purchases represent 13.71% of Bossland's total revenue for the month.
23  Assuming potential purchases associated with California represent 12.17% of
24  purchases associated with the United States, there were 469 purchases associated
25  with California.  These potential purchases represent 1.67% of Bossland's total
26  revenue for the month.

27      60.    During November 2014, purchasers associated with the United States
28  purchased 4,307 units of *all* Bossland products, of which 1,668 were trial licenses.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 47

These purchases represent 14.52% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 524 purchases associated with California.   These potential purchases represent 1.77% of Bossland's total revenue for the month.

61.   During December 2014, purchasers associated with the United States purchased 5,750 units of *all* Bossland products, of which 2,257 were trial licenses. These purchases represent 14.71% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 700 purchases associated with California.   These potential purchases represent 1.79% of Bossland's total revenue for the month.

62.   During January 2015, purchasers associated with the United States purchased 5,401 units of *all* Bossland products, of which 2,068 were trial licenses. These purchases represent 13.41% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 657 purchases associated with California.   These potential purchases represent 1.63% of Bossland's total revenue for the month.

63.   During February 2015, purchasers associated with the United States purchased 4,476 units of *all* Bossland products, of which 1,768 were trial licenses. These purchases represent 14.40% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 545 purchases associated with California.   These potential purchases represent 1.75% of Bossland's total revenue for the month.

64.   During March 2015, purchasers associated with the United States purchased 3,783 units of *all* Bossland products, of which 1,456 were trial licenses.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

EX 7  PG 48

1  These purchases represent 13.19% of Bossland's total revenue for the month.
2  Assuming potential purchases associated with California represent 12.17% of
3  purchases associated with the United States, there were 460 purchases associated
4  with California.   These potential purchases represent 1.61% of Bossland's total
5  revenue for the month.

6      65.   During April 2015, purchasers associated with the United States
7  purchased 3,722 units of *all* Bossland products, of which 1,468 were trial licenses.
8  These purchases represent 11.91% of Bossland's total revenue for the month.
9  Assuming potential purchases associated with California represent 12.17% of
10 purchases associated with the United States, there were 453 purchases associated
11 with California.   These potential purchases represent 1.45% of Bossland's total
12 revenue for the month.

13     66.   During May 2015, purchasers associated with the United States
14 purchased 1,932 units of *all* Bossland products, of which 592 were trial licenses.
15 These purchases represent 9.94% of Bossland's total revenue for the month.
16 Assuming potential purchases associated with California represent 12.17% of
17 purchases associated with the United States, there were 235 purchases associated
18 with California.   These potential purchases represent 1.21% of Bossland's total
19 revenue for the month.

20     67.   During June 2015, purchasers associated with the United States
21 purchased 1,012 units of the Bossland Programs, of which 336 were trial licenses.
22 These purchases represent 9.52% of Bossland's total revenue for the month.
23 Assuming potential purchases associated with California represent 12.17% of
24 purchases associated with the United States, there were 123 purchases associated
25 with California.   These potential purchases represent 1.16% of Bossland's total
26 revenue for the month.

27     68.   During July 2015, purchasers associated with the United States
28 purchased 1,152 units of the Bossland Programs, of which 344 were trial licenses.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6602
Facsimile (510) 450-0801

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 49

These purchases represent 12.28% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 140 purchases associated with California.   These potential purchases represent 1.49% of Bossland's total revenue for the month.

69.   During August 2015, purchasers associated with the United States purchased 1,657 units of the Bossland Programs, of which 508 were trial licenses. These purchases represent 14.63% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 202 purchases associated with California.   These potential purchases represent 1.78% of Bossland's total revenue for the month.

70.   During September 2015, purchasers associated with the United States purchased 2,888 units of the Bossland Programs, of which 869 were trial licenses. These purchases represent 14.76% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 351 purchases associated with California.   These potential purchases represent 1.80% of Bossland's total revenue for the month.

71.   During October 2015, purchasers associated with the United States purchased 1,698 units of the Bossland Programs, of which 471 were trial licenses. These purchases represent 11.44% of Bossland's total revenue for the month. Assuming potential purchases associated with California represent 12.17% of purchases associated with the United States, there were 207 purchases associated with California.   These potential purchases represent 1.39% of Bossland's total revenue for the month.

72.   During November 2015, purchasers associated with the United States purchased 1,812 units of *all* Bossland products, of which 207 were trial licenses.

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

EX 7  PG 50

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telphone (510) 619-6662
Facsimile (510) 450-0801

1  These purchases represent 16.82% of Bossland's total revenue for the month.

2  Assuming potential purchases associated with California represent 12.17% of

3  purchases associated with the United States, there were 221 purchases of *all* of

4  Bossland's products associated with California. These potential purchases represent

5  2.05% of Bossland's total revenue for the month.

6       73.   During December 2015, purchasers associated with the United States

7  purchased 1,864 units of *all* Bossland products, of which 180 were trial licenses.

8  These purchases represent 18.32% of Bossland's total revenue for the month.

9  Assuming potential purchases associated with California represent 12.17% of

10  purchases associated with the United States, there were 227 purchases of *all* of

11  Bossland's products associated with California. These potential purchases represent

12  2.23% of Bossland's total revenue for the month.

13       74.   During January 2016, purchasers associated with the United States

14  purchased 3,092 units of *all* Bossland products, of which 678 were trial licenses.

15  These purchases represent 16.10% of Bossland's total revenue for the month.

16  Assuming potential purchases associated with California represent 12.17% of

17  purchases associated with the United States, there were 376 purchases of *all* of

18  Bossland's products associated with California. These potential purchases represent

19  1.96% of Bossland's total revenue for the month.

20       75.   During February 2016, purchasers associated with the United States

21  purchased 1,844 units of the Bossland Programs, of which 498 were trial licenses.

22  These purchases represent 10.28% of Bossland's total revenue for the month.

23  Assuming potential purchases associated with California represent 12.17% of

24  purchases associated with the United States, there were 224 purchases associated

25  with California. These potential purchases represent 1.25% of Bossland's total

26  revenue for the month.

27       76.   During March 2016, purchasers associated with the United States

28  purchased 987 units of the Bossland Programs, of which 261 were trial licenses.

DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

EX 7  PG 51

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telphone (510) 619-6662
Facsimile (510) 450-0801

1   These purchases represent 9.28% of Bossland's total revenue for the month.
2   Assuming potential purchases associated with California represent 12.17% of
3   purchases associated with the United States, there were 120 purchases associated
4   with California.   These potential purchases represent 1.13% of Bossland's total
5   revenue for the month.

6       77.   During April 2016, purchasers associated with the United States
7   purchased 1,000 units of the Bossland Programs, of which 278 were trial licenses.
8   These purchases represent 11.65% of Bossland's total revenue for the month.
9   Assuming potential purchases associated with California represent 12.17% of
10  purchases associated with the United States, there were 122 purchases associated
11  with California.   These potential purchases represent 1.42% of Bossland's total
12  revenue for the month.

13      78.   During May 2016, purchasers associated with the United States
14  purchased 1,616 units of the Bossland Programs, of which 370 were trial licenses.
15  These purchases represent 7.50% of Bossland's total revenue for the month.
16  Assuming potential purchases associated with California represent 12.17% of
17  purchases associated with the United States, there were 197 purchases associated
18  with California.   These potential purchases represent 0.91% of Bossland's total
19  revenue for the month.

20      79.   During June 2016, purchasers associated with the United States
21  purchased 718 units of the Bossland Programs, of which 56 were trial licenses.
22  These purchases represent 13.47% of Bossland's total revenue for the month.
23  Assuming potential purchases associated with California represent 12.17% of
24  purchases associated with the United States, there were 87 purchases associated with
25  California.   These potential purchases represent 1.64% of Bossland's total revenue
26  for the month.

27      80.   To reiterate, Bossland has never intentionally directed its products –
28  including its Blizzard-related programs – at California or even the United States.  To

8:16-cv-01236

**DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

EX 7  PG 52

Case 8:16-cv-01236-DOC-KES   Document 31-2   Filed 03/13/17   Page 56 of 67   Page ID
#:1191
Case 8:16-cv-01236-DOC-KES   Document 16-1   Filed 11/18/16   Page 18 of 20   Page ID
#:120

1  the contrary, Bossland's programs were offered indiscriminately and, until acquiring

2  the above information from Gate2Shop, Bossland was unaware of the extent of

3  purchases through IP addresses associated with the United States.

4        81.    Since Blizzard's attorney Marc Mayer sent his letter to Gate2Shop,

5  Gate2Shop has been uncooperative with Bossland and the relationship has become

6  hostile to the extent that litigation has been threatened.  It would be fruitless for

7  Bossland to attempt to acquire further transactional information from Gate2Shop,

8  which has already denied reasonable requests for information.  Therefore, the

9  purchase information above represents the most accurate information Bossland has

10 and could acquire concerning transactions associated with the United States and

11 possible transactions initiated by persons within California at the times relevant to

12 Blizzard's Complaint.

**It Would Be Unreasonable To Force Bossland To Litigate In California**

13

14       82.    Bossland has no connection to California or the United States.

15       83.    As I have stated, Bossland is a private corporation formed under the

16 laws of Germany, it has no offices, employees, or evidence it could use to defend

17 itself located in California or the United States.

18       84.    I have never traveled to the United States and, if it became necessary for

19 me to travel to California to represent Bossland and defend against this civil action,

20 that would impose an enormous burden on both my company and me.  I alone

21 manage the daily operations of Bossland.  I am solely responsible for Bossland's

22 accounting.  I and two other employees perform all of the e-mail support services.  I

23 alone manage Bossland's defense against the lawsuits Blizzard is pursuing in Europe

24 concerning the Bossland Programs, which include nine lawsuits in Germany (one of

25 which is before Germany's highest court and the first of which began in 2011) and

26 two lawsuits in the United Kingdom.  These lawsuits often involve filings 100 – 200

27 pages in length, and I have reviewed at least 50 folders of documents three or more

28 inches thick pertaining to these lawsuits.  I spend approximately 40 hours per week

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

18                                        8:16-cv-01236

**DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

 EX 7  PG 53

1  managing Bossland's defense of these lawsuits by reviewing legal filings and other

2  documents, marshaling evidence to demonstrate the falsity of allegations, ensuring

3  Bossland complies with any court orders, and other tasks. Were I to have to appear

4  in California to represent and assist in the defense of Bossland, I would have to stop

5  all of Bossland's operations and it would cease to exist as a functioning company.

6       85.  Therefore, it would be unreasonable and extremely burdensome to

7  require Bossland to litigate this case in California, approximately 6,000 miles from

8  its principal place of business in Zwickau, Germany.

9      I declare under penalty of perjury pursuant to the laws of the State of

10  California and United States of America that the foregoing is true and correct.

11      Executed on November 18, 2016 at Zwickau, Germany.

12

13

14  Zwetan Letschew

THE LAW OFFICE OF ANTHONY G. MATRICCIANI
6400 Hollis Street, Suite 4
Emeryville, California 94608
Telephone (510) 619-6662
Facsimile (510) 450-0801

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19                                            8:16-cv-01236

**DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 355 South Grand Avenue, Fifteenth Floor, Los Angeles, CA 90071-1560.

On November 18, 2016, I served true copies of the following document(s) described as **DECLARATION OF ZWETEN LETSCHEW IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION** on the interested parties in this action as follows:

| | |
|---|---|
| Karin G. Pagnanelli, Esq.<br>Marc E. Mayer, Esq.<br>Emily F. Evitt, Esq.<br>Daniel A. Kohler, Esq.<br>MITCHELL SILBERBERG & KNUPP LLP<br>1377 West Olympic Boulevard<br>Los Angeles, California 90064-1683 | Attorneys for Plaintiff<br><br><br>T:     (310) 312-2000<br>F:     (310) 312-3100<br>kgp@msk.com<br>mem@msk.com<br>efe@msk.com<br>dxk@msk.com |

**BY CM/ECF** for parties that are CM/ECF participants. Service is being made electronically on those parties on the attached list that are registered users of the Court's Electronic Case Filing System.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 18, 2016, at Los Angeles, California.

Denise M. LaCroix

# EXHIBIT 8

Cost Recap - Summary by CostCode (42554-00043 - v. Bossardi)
Client:42554 - Blizzard Entertainment, Inc.   3/10/2017 2:26:24 PM

| CostCode | Worked Amount | Billed Amount | Description |
|---|---|---|---|
| 019 | 66.00 | 66.00 | Photocopying-Color |
| 020 | 73.25 | 49.25 | Copying & Printing |
| 022 | 255.50 | 196.25 | Electronic Media Print Charge |
| 031 | 503.37 | .00 | On Line Legal Research - Lexis |
| 034 | 243.75 | .00 | Word Processing |
| 101 | 875.20 | 861.40 | Misc - |
| 114 | 25.42 | 25.42 | Delivery Services - |
| 165 | 165.09 | 165.09 | Messenger Service/First Legal Network - |
| 172 | 400.00 | 400.00 | Los Angeles Superior Court - |
| TOTAL | 2607.58 | 1763.41 | |

**Pratt, Carolyn**

| | |
|---|---|
| **From:** | Ocubillo, Melanie |
| **Sent:** | Monday, November 09, 2015 5:13 PM |
| **To:** | Pratt, Carolyn |
| **Subject:** | FW: https://protect-us.mimecast.com/s/5JevBJUAYp1ud Payment Confirmation: CACD CM ECF |

c/m 42554-43

**From:** paygovadmin@mail.doc.twai.gov [mailto:paygovadmin@mail.doc.twai.gov]
**Sent:** Monday, November 09, 2015 5:05 PM
**To:** Ocubillo, Melanie
**Subject:** https://protect-us.mimecast.com/s/5JevBJUAYp1ud Payment Confirmation: CACD CM ECF

Your payment has been submitted to Pay.gov and the details are below. If you have any questions or you wish to cancel this payment, please contact CACD CM/ECF Helpdesk at (213) 894-0242.

Application Name: CACD CM ECF
Pay.gov Tracking ID: 25OAVBBO
Agency Tracking ID: 0973-16757724
Transaction Type: Sale
Transaction Date: Nov 9, 2015 8:05:24 PM

Account Holder Name: Carolyn A. Pratt
Transaction Amount: $400.00
Billing Address: 11377 West Olympic Boulevard
Zip/Postal Code: 90064-1683
Country: USA
Card Type: MasterCard
Card Number: ************8141

THIS IS AN AUTOMATED MESSAGE. PLEASE DO NOT REPLY.

1

EX 8  PG 57

*See Page 2*



# INVOICE

Invoice Date: 01/07/2016

Usage From: 10/01/2015          to: 12/31/2015

**Account Summary**

| | |
|---|---|
| **Pages:** | 12,367 |
| Rate: | $0.10 |
| Subtotal: | $1,236.70 |
| **Audio Files:** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| **Current Billed Usage:** | $1,236.70 |
| **Previous Balance:** | $0.00 |
| Current Balance: | **$1,236.70** |

*ok as indicated cap 1/25/16*

| | |
|---|---|
| **Account #:** | 2602402 |
| **Invoice #:** | 2602402-Q42015 |
| **Due Date:** | 02/10/2016 |
| **Amount Due:** | $1,236.70 |

**Total Amount Due:**    $1,236.70

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is: **74-2747938**

Questions about the invoice?
Visit **pacer.gov/billing**

### Getting Ready for NextGen CM/ECF

Over the past year, several appellate, district, and bankruptcy courts throughout the country have implemented the next generation (NextGen) CM/ECF system. While most courts have not yet set a date for when they will switch to NextGen, you can begin preparing now by upgrading your PACER account. To learn more, visit the NextGen information page at pacer.gov/nextgen.

· **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
· **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
· **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions

---

*Please detach the coupon below and return with your payment.*  **Thank you!**



| Account # | Due Date | Amount Due |
|---|---|---|
| 2602402 | 02/10/2016 | $1,236.70 |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

*Visit pacer.gov for address changes.*

Mitchell Silberberg & Knupp LLP

11377 West Olympic Blvd.
Los Angeles, CA 90064-1683

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

EX 8  PG 58

# PACER QUARTERLY CLIENT BILLING REPORT
## CUSTOMER NUMBER: MS0272
## DATE RANGE:        10/1/2015 – 12/31/2015

| Client/Matter | User | $ Amount |
|---|---|---|
| 16922-00223 | JDB | $19.20 |
| 16922-00223 | ACS | $7.50 |
| 16922-00223 | EGD | $4.50 |
| 16922-00223 | JMM | $15.80 |
| 16922-00223 | KLS | $8.20 |
| 16922-00223 | JLO | $7.80 |
| 16922-00223 | CTL | $3.10 |
| **16922-00223 Total** | | **$66.10** |
| 28477-00139 | MMO | $1.90 |
| 28477-00139 | RMC | $2.10 |
| 28477-00139 | JWL | $1.90 |
| **28477-00139 Total** | | **$5.90** |
| 28477-00156 | SEB | $152.30 |
| **28477-00156 Total** | | **$152.30** |
| 37182-00002 *mzz* | JDB | $10.20 |
| **37182-00002 Total** *mzzv* | | **$10.20** |
| 37182-00022 | MXB | $3.00 |
| 37182-00022 | NXS | $8.60 |
| 37182-00022 | CDM | $27.30 |
| 37182-00022 | KRS | $4.30 |
| **37182-00022 Total** | | **$43.20** |
| 40479-00005 | NSS | $5.50 |
| **40479-00005 Total** | | **$5.50** |
| 41698-00023 | PDM | $9.50 |
| **41698-00023 Total** | | **$9.50** |
| 41770-00010 | JMM | $18.40 |
| **41770-00010 Total** | | **$18.40** |
| 42040-00008 | MXW | $0.10 |
| 42040-00008 | NXS | $1.20 |
| 42040-00008 | AXO | $3.20 |
| 42040-00008 | KLS | $0.50 |
| 42040-00008 | DXK | $0.10 |
| **42040-00008 Total** | | **$5.10** |
| 42554-00043 | KLS | $3.10 |
| 42554-00043 | MMO | $4.40 |
| 42554-00043 | DXK | $6.30 |
| **42554-00043 Total** | | **$13.80** |
| 42840-00048 | IGM | $6.40 |

$33.00 (handwritten)

EX 8  PG 59

## CHECK REQUISITION

CHARGE TO:

DATE: 7-15-16

| B/A NO. | CLIENT NO. | MATTER NO. |
|---------|-----------|-----------|
|         | 42554     | 43        |

CHECK NO. ☒ GEN. ACCT.   ☐ TRUST ACCT.

NAME OF CLIENT: Blizzard

PAYABLE TO: ABC Legal Services, Inc

AMOUNT: $ 450.00   *Hague service fee*

PURPOSE: Service charge

REQUESTED BY: Evitt

NEW VENDOR INFORMATION:
1. ADDRESS: You have as Process Forwarding Int'l
2. TAXPAYER ID. #:

IF OVER $500, APPROVED BY: _____

4/13/06          354575.1

---

**MITCHELL SILBERBERG & KNUPP LLP**

DATE: 07-15-16    PAYEE:  ABC LEGAL SERVICES          VENDOR #: 105566          CHECK #: 244193

| REF. # | INV. # | INV. DATE | INV. AMOUNT | GL ACCOUNT # | AMT. PAID |
|--------|--------|-----------|-------------|--------------|-----------|
| 230047 | 071516ED4 | 07-15-16 | 450.00 | 00-24110-00-0000 | 450.00 |
|  |  |  |  |  | 450.00 |

EX 8  PG 60

**Donmoyer, Sunni**

| | |
|---|---|
| **From:** | paygovadmin@mail.doc.twai.gov |
| **Sent:** | Friday, July 01, 2016 2:13 PM |
| **To:** | Donmoyer, Sunni |
| **Subject:** | https://protect-us.mimecast.com/s/3RX8BRha976Cw Payment Confirmation: CACD CM ECF |

Your payment has been submitted to Pay.gov and the details are below. If you have any questions or you wish to cancel this payment, please contact CACD CM/ECF Helpdesk at (213) 894-0242.

Application Name: CACD CM ECF
Pay.gov Tracking ID: 25SHB185
Agency Tracking ID: 0973-18123648
Transaction Type: Sale
Transaction Date: Jul 1, 2016 5:13:07 PM

Account Holder Name: Elizabeth Carrera
Transaction Amount: $400.00
Card Type: MasterCard
Card Number: ***********3272

THIS IS AN AUTOMATED MESSAGE. PLEASE DO NOT REPLY.

EX 8  PG 61



*See Page 2*



# PACER
## Public Access to Court Electronic Records


**INVOICE**

Invoice Date: 01/09/2017
Usage From:  10/01/2016    to: 12/31/2016

## Account Summary

| | |
|---|---|
| **Pages:** | 17,729 |
| Rate: | $0.10 |
| Subtotal: | $1,772.90 |
| **Audio Files:** | 0 |
| Rate: | $2.40 |
| Subtotal: | $0.00 |
| **Current Billed Usage:** | $1,772.90 |
| | |
| **Previous Balance:** | $0.00 |
| Current Balance: | **$1,772.90** |

*aah ok*
*1/19/17*

| Account #: | 2602402 |
|---|---|
| **Invoice #:** | 2602402-Q42016 |
| **Due Date:** | 02/10/2017 |
| **Amount Due:** | $1,772.90 |

### Contact Us

San Antonio: (210) 301-6440
Toll Free: (800) 676-6856
Hours: 8 am - 6 pm CT M-F
pacer@psc.uscourts.gov

---

## *Total Amount Due:*  ➡  $1,772.90

See pacer.gov/billing for detailed billing transactions, instructions for disputing transactions, FAQs, and more.

It's quick and easy to pay your bill online with a credit card. Visit the **Manage My Account** section of the PACER Service Center website at pacer.gov.

The PACER Federal Tax ID is: **74-2747938**

### Preparing for NextGen CM/ECF

In recent months, as more courts throughout the country have implemented the next generation (NextGen) CM/ECF system, some users have encountered issues that can affect account access and registration. The resources listed below can help you avoid many of these issues, creating a smooth transition when your court converts. Check your court's website for updates on when it will implement NextGen.

- **NextGen Help** (pacer.gov/nextgen): Provides general information about NextGen conversion
- **Electronic Learning Modules** (pacer.gov/ecfcbt/cso/index.html): Provides user training for new NextGen features
- **NextGen CM/ECF FAQs** (pacer.gov/psc/hfaq.html): Answers common NextGen-related questions
- **Court Links** (pacer.gov/psco/cgi-bin/links.pl): Shows which courts have converted

Questions about the invoice?
Visit **pacer.gov/billing**

---

*Please detach the coupon below and return with your payment.*  **Thank you!**


## PACER
Public Access to Court Electronic Records

| Account # | Due Date | Amount Due |
|---|---|---|
| 2602402 | 02/10/2017 | $1,772.90 |

Do not send cash. Make checks or money orders drawn on a U.S. Bank in U.S. dollars payable to: PACER Service Center. Include your account ID on the check or money order.

*Visit pacer.gov for address changes.*

Mitchell Silberberg & Knupp LLP

11377 West Olympic Blvd.
Los Angeles, CA 90064-1683

PACER Service Center
P.O. Box 71364
Philadelphia, PA 19176-1364

EX 8  PG 62

# PACER QUARTERLY CLIENT BILLING REPORT
## CUSTOMER NUMBER: MS0272
### DATE RANGE:  10/1/2016 – 12/31/2016

| Client/Matter | User | $ Amount |
|---|---|---|
| 16922-00223 | JDA | 5.00 |
| 16922-00223 | GAN | 10.00 |
| 16922-00223 | JDB | 14.40 |
| **16922-00223 Total** | | **29.40** |
| 28477-00139 | MMO | 12.10 |
| **28477-00139 Total** | | **12.10** |
| 30833-00000 | MEM | 165.00 |
| **30833-00000 Total** | | **165.00** |
| 41621-00003 | MMO | 98.40 |
| **41621-00003 Total** | | **98.40** |
| 41698-00023 | MCP | 21.00 |
| 41698-00023 | NST | 4.40 |
| **41698-00023 Total** | | **25.40** |
| 41770-00008 | BYM | 22.30 |
| 41770-00008 | GAN | 1.30 |
| 41770-00008 | TXM | 4.40 |
| 41770-00008 | JMM | 0.20 |
| **41770-00008 Total** | | **28.20** |
| 41770-00011 | JDA | 14.60 |
| 41770-00011 | JMM | 4.40 |
| **41770-00011 Total** | | **19.00** |
| 41770-00013 | BYM | 2.60 |
| 41770-00013 | GAN | 2.20 |
| 41770-00013 | CTL | 0.70 |
| 41770-00013 | JMM | 14.00 |
| **41770-00013 Total** | | **19.50** |
| 42040-00006 | AXO | 1.40 |
| 42040-00006 | TBB | 24.60 |
| 42040-00006 | MXW | 3.90 |
| **42040-00006 Total** | | **29.90** |
| 42040-00008 | TBB | 5.90 |
| **42040-00008 Total** | | **5.90** |
| 42554-00043 | EFE | 2.50 |
| 42554-00043 | JDB | 5.90 |
| 42554-00043 | MEM | 2.70 |
| 42554-00043 | KGP | 0.30 |
| **42554-00043 Total** | | **11.40** |
| 43277-00003 | MEM | 1.70 |